[No. 2942-2. Division Two. August 22, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. ANDREW J. ALEXIS, *Appellant.*

*Walter Sowa,* for appellant.

*Craig Ritchie, Prosecuting Attorney,* for respondent.

CALLOW, J.—Andrew Alexis appeals his conviction for rape and assault. The appellant's codefendant, Jefferson Sawyer, was also convicted. We find the representation of both defendants by one attorney deprived the defendant of the effective assistance of counsel, reverse the conviction and remand the cause for a new trial.

On February 28, 1977, the defendant was charged with rape in the first degree and assault in the second degree. Jefferson Sawyer was separately charged with the same crimes on the same day. An attorney from the public defender's office was appointed to represent both defendants. The defendant Alexis agreed to take a polygraphic examination on the subject of his participation in the alleged rape and stipulated to its admissibility at trial. The polygraphic examination indicated that he was lying when he denied that the acts were committed without the consent of the victim.

The motion of the State to consolidate the two matters for trial was granted. Several weeks later the motion of defense counsel for a severance of the cases was denied. A CrR 3.5 hearing was held in which statements Sawyer had given to the police were ruled admissible. The prosecuting attorney argued in a motion in limine that Alexis' prior convictions should be admissible as part of the prosecution's case–in–chief. The court limited the use of such prior convictions to impeachment only.

Trial commenced on May 23, 1977.. The defense counsel renewed the motion to sever after the jury had been empaneled. During this argument defense counsel elaborated upon the prejudicial effect of the stipulated polygraph examination as it would relate to the guilt of Sawyer, who did not take a polygraph. The State then agreed with

defense counsel and requested that the court consider a severance. Following further consideration, the court agreed to sever the trial of the two defendants. Defense counsel then stated that the court could not sever the trial since a jury had already been empaneled. The court inquired whether or not the defense counsel was withdrawing his motion to sever, and defense counsel stated that the motion to sever was made only to preserve any claim of error. Defense counsel argued that the court, having once joined the defendants for trial and a jury having been empaneled, there could be no severance. The court then ruled that the trial would continue as to both defendants. After so ruling, the court inquired of each defendant whether or not he wanted to proceed separately or jointly, and each defendant indicated he wished to proceed. The defense counsel again attempted to exclude the polygraph testimony, but the evidence was admitted. The jury found both defendants guilty as charged.

The jury was presented with undisputed testimony showing that the victim, whom Alexis and Sawyer had met at a club in the late evening of February 23 or 24, 1977, was taken to Alexis' cabin in a secluded part of the county after all three of them had become intoxicated. They spent the next few hours at the cabin, during which time there were repeated acts of intercourse with the victim. They left the cabin early the next morning and drove to Neah Bay, where Sawyer and the victim lived. She complained to the police the next day. She showed no marks of physical abuse except a bruise under her armpit and did not visit a physician for any reason related to the incident.

The chief prosecution witness was the victim, who maintained that she was subjected to physical attack, threats and sexual abuse; that the defendants were armed with a knife and nonchuka sticks; that in the course of their attack on her, the rib brace she was wearing to protect her sore ribs was torn off; that in parting Alexis threatened to kill not only her, but her husband also, if she told anybody about it; that in the course of the drive to Neah Bay, she

was choked with a rope until she agreed to keep quiet. She further stated that after stopping along a side road on the trip back, she was forced to commit acts of oral sodomy upon each defendant.

In addition to the victim's testimony, the results of a polygraph test voluntarily taken by Alexis were admitted, as well as Sawyer's statements to the arresting officer. The defense maintained that the victim had consented, and that only when her husband, who had a reputation for beating her, heard rumors of her behavior did she recount the incident as a rape. The defense also offered testimony that she had many opportunities to escape if she so wished. Sawyer was the chief defense witness. Alexis, whose prior rape conviction was ruled admissible for impeachment purposes, did not testify for fear of the possible prejudicial effect of such an impeachment.

The prosecution asserts there was other evidence implicating the defendants. A search of Alexis' cabin after his arrest revealed nonchuka sticks hanging on the walls and a knife located in the top drawer of a dresser in a bedroom. The victim had described Alexis as having cut off a piece of rope which he eventually used to choke her. A rope was discovered tied onto a hook next to a bedroom door in the area which the victim described. The brown jacket Alexis was purportedly wearing the morning of the incident was found with a piece of rope in the pocket matching the description of the rope used to choke the victim. The victim's blue wallet was found underneath a cushion on a couch in the cabin. Further, the victim's rib brace was introduced into evidence in a damaged condition. An expert witness from the state crime lab testified that the brace had been torn rather than cut, and that it would have been difficult for the person wearing the brace to tear it in that manner. The statements made by Alexis at the time of his arrest were introduced into evidence, and these statements conflicted with the results of the polygraph examination.

 A criminal defendant is denied the effective assistance of counsel in violation of the Sixth Amendment when

his defense attorney is required to represent a codefendant whose interests conflict with those of the defendant. *Glasser v. United States,* 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457 (1942). Here, the defense attorney was presented with a substantial conflict of interest in attempting to represent both Sawyer and Alexis. The conflict of interest faced by the defendant's attorney arose in three different areas:

1. The defense attorney was presented with a conflict of interest in deciding whether to sever the trials of the two defendants and whether to put either Alexis or Sawyer, or both, on the stand. Three problems were involved: (a) Alexis' prior convictions could be introduced to impeach his testimony only if he testified; (b) Sawyer's prior statements to the police which placed blame on Alexis could only be introduced at his trial; and (c) the results of the polygraphic examination of Alexis could only be introduced at his trial.

2. Defense counsel was presented with a conflict of interest when Sawyer's prior statements to the police implicating Alexis in the rape had been introduced. At that moment counsel might have created possible grounds for reversal of any verdict against Alexis by not calling Sawyer to the stand. See the comments in *Carter v. State,* 266 Ind. 140, 361 N.E.2d 145 (1977). *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), held that a criminal defendant is denied his right of cross–examination secured by the confrontation clause of the Sixth Amendment when, in a joint trial, a nontestifying codefendant's out–of–court confession implicating the codefendant is introduced.[1] In a similar case it was stated in *Baker v. Wainwright,* 422 F.2d 145, 148 (5th Cir. 1970), *cert. denied,* 399 U.S. 927 (1970):

---

[1]The *Bruton* case held that, "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of Evans' confession in this joint trial violated petitioner's right of cross–examination secured by the

> When a defense counsel has it within his power to void a proceeding against his client and, because of his representation of another is not completely free to exercise this power, he most assuredly has a directly conflicting interest.

(Footnote omitted.)

In *People v. Caffray,* 62 Mich. App. 486, 233 N.W.2d 625 (1975), the defendant Caffray had prior convictions and his codefendant had confessed implicating Caffray in the crime. The codefendant wished to repudiate his confession at trial. The prosecutor introduced the confession which named Caffray as his accomplice. At this point the defense counsel representing both codefendants could upset a conviction of Caffray under the *Bruton* rule by keeping the codefendant off the stand. To do so, however, would be unfair to the codefendant who might wish to deny his confession. The codefendant took the stand and Caffray's conviction was reversed on the ground of ineffective assistance of counsel. While the confession in the case before us did not actually name Alexis, the reference to "another" so clearly pointed to Alexis that on this issue Alexis would have been prejudiced had Sawyer not taken the stand. *See Carter v. State, supra.*

3. The defense attorney was presented with a conflict of interest because a possible defense for Sawyer was to blame Alexis. Sawyer's initial statement to the police indicated that he was too drunk to know what was going on and that Alexis had instigated the rape. The defense attorney asked questions both on direct and cross–examination which tended to emphasize the differences in the roles of the two defendants. This created a substantial conflict between the two defendants and put defense counsel in the position of trying to defend both while implicating one as the principal wrongdoer.

Confrontation Clause of the Sixth Amendment." *Bruton v. United States, supra* at 126.

*Holloway v. Arkansas*, 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978),[2] held that where a timely objection is raised to joint representation, unless the court inquires into such possible conflicts as might arise, a conviction where there has been such representation must be, overturned. The court said that the assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error". *Chapman v. California*, 386 U.S. 18, 23, 17 L. Ed. 2d 705, 87 S. Ct. 824, 827, 24 A.L.R.3d 1065 (1967).

The problem of joint representation was raised 2 weeks before trial by the defense attorney at the hearing of a pretrial motion, and by the prosecutor in argument on the severance motion before trial commenced. While the defense attorney responded to the court's question about having any hesitancy representing both defendants by saying "As far as the possibility of conflict in their testimony, one putting the burden or the blame on the other, no." Defense counsel mentioned his difficulty in representing both defendants in making tactical decisions, and the prosecutor pointed out the potential prejudice that each defendant's case could have on that of his codefendant. Several courts have imposed a strict duty of inquiry upon the trial court in all cases of joint representation regardless of whether the matter is raised by motion or not. *See United States v. Carrigan*, 543 F.2d 1053 (2d Cir. 1976); *United States v. Foster*, 469 F.2d 1 (1st Cir. 1972). As

---

[2]Decided following the trial of this case. In *Holloway*, the court quoted from *Glasser v. United States*, at page 1179, as follows: "'Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused *by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court.*' 315 U.S., at 71, 76 (emphasis added)."

stated in *United States v. Lawriw,* 568 F.2d 98, 101 (8th Cir. 1977):

> [D]ual representation is fraught with risk of conflict and should be approached with caution by the parties and by counsel. . . . [R]esponsibility for avoiding such risks lies heavily both with the trial court, . . . and with counsel, . . .
>
> . . . The Sixth Amendment right to effective assistance of counsel contemplates the assistance of a counsel free from conflicts of interest, and able to render independent judgment on behalf of his client. . . .
>
> . . . [D]ual representation of codefendants is not *per se* violative of the Sixth Amendment right. . . . We have required a showing of an actual conflict of interest or evidence pointing to a substantial possibility of a conflict of interest before reversal is commanded on this ground alone. . . .
>
> On the other hand we have not hesitated to hold that a defendant was denied effective assistance of counsel when dual representation precluded him from asserting an independent defense.

The trial court was faced with a difficult and perplexing situation. Defense counsel indicated he did not wish the trials to be separated, though he had made a formal motion for severance, and the jury waited in the jury box.[3] The court attempted to resolve the controversy by asking the defendants themselves whether they wished to sever or proceed to trial. Both indicated a willingness to continue the joint trial. The trial court was adrift in a sea of contradictions with the winds all blowing in the wrong direction.

However, the statements of the defendants cannot be construed to be an intelligent waiver of their objections on the matter. A waiver requires the intentional relinquishment of a known right. *Johnson v. Zerbst,* 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, 146 A.L.R. 357 (1938). Here, counsel espoused one course of action and pursued another.

---

[3]Counsel may not take inconsistent positions. A motion should not be made unless it has a serious purpose, and a trial court has a right to understand that any motion is meant to be taken at face value. There is no such thing as a motion made "merely for the record."

The defendants could not be other than confused. The fact that severance was urged indicates that counsel was aware that one defendant's case might prejudice the case of the other, and separate counsel was indicated. *See, e.g., Robinson v. Parratt,* 546 F.2d 764 (8th Cir. 1976); *United States v. Gaines,* 529 F.2d 1038 (7th Cir. 1976). Where, as here, severance is indicated as a possibility in a criminal case, the court must resolve the problem of whether one counsel can properly represent two or more codefendants, not from the statements of counsel, but from the total factual situation presented. In the event that possible conflicts exist, separate counsel must be provided and/or separate trials granted.

The issues raised in the personal restraint petition presented have either been answered or are appropriately disposed of by our decision in this case.

The judgment is reversed and the cause remanded for a new trial.

REED, A.C.J., and PETRIE, J., concur.

Reconsideration denied September 21, 1978.