Kelvin **WALKER**

v.

Seth **GARRINGTON, Warden,**
**Turney Center.**

**Civ. A. No. 80–3710.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Sept. 11, 1981.

Walter C. Kurtz and Kenneth J. Ries, Nashville, Tenn., for plaintiff.

William W. Hunt, III, Asst. Atty. Gen., Nashville, Tenn., for defendant.

## MEMORANDUM

JOHN T. NIXON, District Judge.

The petitioner, Kelvin Walker, seeks a *writ of habeas corpus* under 28 U.S.C. § 2254 alleging that his Sixth Amendment rights were infringed when he was jointly tried and convicted in state court along with a co-defendant who was represented at trial by the same attorney. Petitioner contends that he and a co-defendant had conflicts of interest which prevented his trial attorney from providing effective assistance of counsel. Petitioner also claims that he was denied his right to be sentenced by a correctly instructed jury. The Court has held an evidentiary hearing and fully considered the record and arguments of counsel. For the reasons stated below the petition will be granted unless the State of Tennessee, on its own motion, moves to vacate the petitioner's conviction and grant a new trial within sixty (60) days.

### I.

Petitioner and a co-defendant, Weldon Brock, were indicted by the grand jury of Davidson County, Tennessee, on charges of second degree burglary and use of a firearm as a means of escaping from a felony. After a joint trial in which each was represented by the same assistant public defender, a criminal court jury convicted Walker and Brock of both charges.

The event which formed the basis of the convictions was recited concisely by the Tennessee Court of Criminal Appeals

The evidence shows that on October 4, 1977, Mr. Jim Bell returned to his home in Davidson County to find two men inside. Mr. Bell testified that prior to leaving his home earlier, he had locked both doors and that all the windows were closed. When Bell surprised the intruders, one or both of the men ordered "stick'em up", a scuffle ensued, and a pistol shot was fired by one of the intruders at Bell as he retreated. Mr. Bell left the house and drove away in his truck. As he did so, another shot struck the truck's front fender. Bell saw one of the men running for a nearby wooded area, and later gave a description of the two men to the police, as well as the direction in which one of the men was last seen heading.

Subsequently, two Metro policemen observed two men emerge from the woods along Interstate 40, approximately one and one-half miles from Bell's farm, and enter a station wagon parked at an exit ramp. The men were apprehended and taken to Bell's farm, where he identified them as the two persons he had found in his home. Apparently bothing (sic) was missing from the house, and the point of entry of the intruders could not be ascertained. *Weldon Brock and Kelvin Walker v. State of Tennessee*, No. C–1773 (Ct. of Crim.App. April 10, 1979).

The trial judge sentenced both defendants to a term in the state penitentiary of not less than three nor more than three years on the burglary conviction and to a term of five years for the use of a firearm. The jury recommended that the sentences run concurrently. The trial judge, however, ordered the sentences to be served consecutively. Walker and Brock appealed their convictions assigning as error, *inter alia*, the conflict of interest and sentencing charge issues asserted here. The Court of Criminal Appeals of Tennessee affirmed Walker's conviction and sentence in the trial court.[1] The Supreme Court of Tennessee granted Walker's petition for certiorari.[2] The Court held that the firearm statute, Tenn.Code Ann. § 39–4914 should not have been applied, but found the error harmless because application of the enhancement statute would have meant a higher minimum penalty.[3] Without discussion, the Court found Walker's other allegations of error meritless and affirmed the trial court. *Walker v. State*, 606 S.W.2d 531 (Tenn. 1980).

1. *Weldon Brock and Kelvin Walker v. State of Tennessee*, No. C–1773 (Ct. of Crim.App. April 10, 1979). The Court reversed Brock's conviction for employing the firearm, holding that Tenn.Code Ann. § 39–4914 could not apply to Brock because there was no evidence in the record that he had actual, joint, or constructive possession of a firearm.

2. Respondent is incorrect in his contention that *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) precludes review of the conflict of interest issue in this petition. The issue clearly was raised and rejected on its merits in both the Tennessee Court of Criminal Appeals and the Tennessee Supreme Court. There is no indication that these courts relied on a procedural default in ruling against petitioner on the conflict of interest claim. Thus, *Wainwright v. Sykes*, does not apply. *See, County Court of Ulster County v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) and *Berrier v. Egeler*, 583 F.2d 515 (6th Cir. 1978), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978). Respondent further contends in an amended answer that the Sixth Amendment issue inherent in petitioner's conflict of interest claim was not presented to the state courts and, thus is barred by the exhaustion of remedies doctrine. This argument fails for the same reason. Once issues of asserted constitutional violations have been presented to the state's highest court, the exhaustion doctrine does not require futile repetitive presentation to such courts. *Duke v. Wingo*, 386 F.2d 304 (6th Cir. 1967).

3. The Supreme Court held:

"Although error was committed in charging and sentencing the defendant under the terms of T.C.A., § 39–4914, it does not follow that he is entitled to relief. Under the incorrect charge he was given a total sentence of eight years (three years under T.C.A., § 39–903, plus five years under T.C.A., § 39–4914). If the jury had been correctly charged under T.C.A. § 39–903, the minimum sentence which could have been assessed against the defendant is ten years. We, therefore, agree with the argument of the State that the error was harmless with respect to the defendant and that he is not entitled to relief." *Walker v. State*, 606 S.W.2d 531, 533 (Tenn.1980).

 The basis for Walker's conflict of interest claim lies in dilemmas which he contends faced his trial attorney in plea bargaining and in cross-examination of witnesses. The Court of Criminal Appeals discussed the facts surrounding the plea agreement:

Both Walker and Brock contend that the trial court erred in refusing to grant a severance requested by the trial counsel who represented them jointly, as there was a conflict of interest between the appellants which made joint representation improper. The District Attorney General offered a plea-bargaining "deal" to Appellant Walker, contingent upon both Walker and Brock pleading guilty to all charges in the case. On the morning of the trial, Walker informed joint trial counsel that he desired to plead guilty and participate in the plea-bargaining offer, but Appellant Brock refused to plead guilty. Thus, the contingency demanded by the District Attorney General that Brock also plead guilty was not met and the offer was withdrawn with regard to Walker. Because of the conflicting desires of his two clients, counsel moved the court to sever the cases. However, that motion was denied. *Weldon Brock and Kelvin Walker v. State of Tennessee, supra.*

The appellate court rejected Walker's argument regarding the conflict of interest alleged in this petition:[4]

Here, what conflict there was between the interests of the two defendants ended when the District Attorney withdrew the plea-bargaining offer. The granting of a severance, or even the appointment of separate counsel, would not have proved advantageous to either of the defendants, since the conflict was resolved by the District Attorney General's decision.

Counsel presented the plea bargain requirements to both clients. Only one accepted, and the offer was revoked. No further conflicts were apparent during the trial. Neither defendant testified, there were no confessions, and the remainder of the proof brought out no conflicting interests. *Weldon Brock and Kelvin Walker v. State of Tennessee, supra.*

Because of the difficulty in evaluating Walker's claim from the record[5], particularly as to the plea bargaining process, this Court held an evidentiary hearing.

At the hearing additional material facts were developed relating to the conflict of interest issue. Walker's trial attorney, Joseph Miranda Hoats, testified, detailing those facts related in his affidavit which the petitioner filed with the state appellate court. The affidavit states, in pertinent part:

As of the date of February 9, 1978, I represented Weldon Brock and Kelvin L. Walker on a two-count indictment alleging the offenses of Burglary in the Second Degree and violation of T.C.A. § 39–4914 in Case Number C–1773.

At this time I was an Assistant Public Defender assigned to Division I of the Criminal Court for Davidson County. I had previously been in the Juvenile Court of Davidson County, Tennessee for three (3) months, this being my first year of practice. I was transferred to the Division I of the Criminal Court for Davidson County upon the death of John K. Kyle, Assistant Public Defender, and after an accident in which Niles S. Nimmo, Assistant Public Defender, was seriously injured and was undergoing a period of convalescence.

---

4. Section 2254(d) of the federal habeas corpus statute does not require this Court to presume the correctness of the Tennessee Court of Criminal Appeals' finding of no conflict of interest because it is a "mixed determination of law and fact that requires the application of legal principles to the historic facts of this case". *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). Furthermore, the exception of § 2254(d)(3) provides

that this Court need not presume the correctness of a state courts' factual findings if the material facts were not adequately developed at the state court hearing. Application of this exception would be appropriate here.

5. The transcript of the motion to sever in which the plea-agreement is discussed fills less than two pages. See, Appendix.

Prior to February 9, 1978, both of the above-named defendants indicated to me that they were not involved in the commission of the offense and both requested a jury trial. On the date of February 9, 1978, Kelvin L. Walker informed me that he wished to plead guilty to all of his charges. On this date, he was represented by Jim Omer, a Nashville attorney, on some cases and on a possession case by Niles S. Nimmo, Assistant Public Defender. The fact that defendant Walker wished to plead guilty and was supplied to me by him during the recess in between the calling of the docket and the impaneling of the jury.

After a discussion with Mr. Omer and Mr. Nimmo, I concluded that it would be a conflict of interest for me to represent both Kelvin L. Walker and Weldon Brock. Court was then reopened and I attempted to present this situation to the Court, explained the predicament and moved for a severance, in order to obtain separate counsel for either Mr. Walker or Mr. Brock.

The Court barely listened to my explanation, as reflected in the record, and would not consider my motion for severance. The Court called in the jury and, on the horns of a dilemma, I proceeded with my first jury trial.

In addition to relating the facts recited in the affidavit, Walker's trial attorney testified that he did not discuss the possibility of conflict of interest arising from joint representation with either of the defendants. He explained that he was not fully aware of the possibility of a conflict of interest until the day of trial when Walker wanted to plead guilty and Brock did not desire to plead guilty. Mr. Hoats testified that because of joint representation, he could not offer Walker's testimony against Brock. Under the plea agreement proposed to Walker, he would have received five years for all of the charges pending against him, including those which had not come to trial. Mr. Hoats testified that the victim had not remembered who had the pistol at the preliminary hearing. At trial, the victim testified Walker had the pistol. Mr. Hoats testified that his divided loyalties in joint representation prevented him from fully cross-examining the victim or arguing to the jury on the pistol possession issue because to do so would necessarily reflect on Brock. It was not clear from Mr. Hoats' testimony that he fully appreciated the possibility of conflict on the gun possession issue prior to the day of trial. Mr. Hoats made the severance motion on the morning of the trial in an attempt to avoid these conflicts and inform the court they existed. He testified that the trial court cut him off before he could fully explain the basis for the motion and that he actually feared being held in contempt if he pursued the matter by withdrawing as counsel or discussing the conflict issue further. Mr. Hoats testified that he believed a severance would have solved the conflict by necessitating appointment of other counsel for one of the defendants.[6]

Petitioner Walker testified, confirming that he had desired to plead guilty under the agreement in which he would have received five years for the charges on trial that day plus several other charges. He testified that he was not told by his trial attorney of any possible conflict of interest and did not understand its significance until appeal. Walker said he was not aware the trial court could appoint him other counsel.

The attorneys who represented Walker on the other charges, each testified that they advised Mr. Hoats a conflict existed and encouraged him to move for a severance and withdraw. Mr. Nimmo approached Mr. Hoats during the hearing on the severance motion in order to insure that the motion was made. Mr. Nimmo testified that the trial judge seemed in a hurry to get on with the trial and that the atmosphere that day appeared to discourage further discussion of the conflict of interest issue.

---

**6.** Mr. Walker is represented on this petition by the Metropolitan Public Defender Walter C. Kurtz and Assistant Public Defender Kenneth J. Ries. Mr. Hoats is no longer an assistant on the Public Defender's staff, having left that position about the time Mr. Kurtz assumed his duties in September of 1978.

## II.

In the leading case of *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) the Supreme Court held that, while representation of criminal co-defendants is not a *per se* violation of Sixth Amendment guarantees, simultaneous representation of co-defendants who have conflicting interests does deny the effective assistance of counsel required by the Constitution. *Glasser* made it clear that the trial court has a duty to insure that a defendant's right to untrammeled and unimpaired assistance of counsel not be abridged by court appointment of one attorney to represent conflicting interests. *Id.* at 70–72, 62 S.Ct. at 464–466.

Relying upon *Glasser*, in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426, (1978), the Court held that the trial court, when faced with timely objections to multiple representation by defense counsel, must either appoint separate counsel or take adequate steps to determine whether the risks of multiple representation are so remote that separate counsel is not required. *Holloway* did not attempt to determine whether the conflict alleged actually existed, but rather held that the trial court deprived the defendants of constitutionally guaranteed assistance of counsel by failing to respond to the defense attorney's repeated and timely assertions that his clients' interests conflicted. *Id.* at 484, 98 S.Ct. at 1178. The Court quoted *Glasser*:

> 'Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused.... The trial court should protect the right of an accused to have the assistance of counsel....
>
> . . . . .
>
> 'Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused *by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court.* 315

U.S., at 71, 76, 62 S.Ct. at 465, 467 [emphasis added by court].' *Holloway*, 435 U.S. at 484–485, 98 S.Ct. at 1179.

In situations such as the one presented in *Holloway*, the Court held that the defendant need not show how he was prejudiced by the joint representation.

Finally, a rule requiring a defendant to show that a conflict of interests—which he and his counsel tried to avoid by timely objections to the joint representation—prejudiced him in some specific fashion would not be susceptible of intelligent, evenhanded application. In the normal case where a harmless-error rule is applied, the error occurs at trial and its scope is readily identifiable. Accordingly, the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury. But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation. [citations omitted] Id. 435 U.S. at 490–491, 98 S.Ct. at 1181–1182.

Two issues expressly reserved in *Holloway* were addressed by the Court in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). *Sullivan* involved three co-defendants who were represented at separate trials by the same two attorneys neither of whom suggested a possible conflict to the trial court. First, the Supreme Court

held that where there was no objection to multiple representation by counsel or special circumstances from which the trial court knew or reasonably should have known the existence of a particular conflict, the state trial judge had no duty to inquire as to the propriety of multiple representation. The trial court may rely upon the ethical obligation of defense counsel to avoid conflicting representations and to advise the court promptly when a conflict arises. Second, a defendant who raised no objection at trial must demonstrate, in order to establish a Sixth Amendment violation, that an actual conflict adversely affected his lawyer's performance. However, the Court in *Sullivan* reiterated the principle established in *Glasser* that a defendant who shows the existence of a conflict of interest which actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.

More recently, in *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), the Supreme Court remanded the case to the trial court for a determination of whether a conflict of interest existed at the time of a probation hearing when the attorney representing two employees of a pornography shop on obscenity law violations was paid by their employer who had a different interest in the matter than the defendants. The Court found that the possibility of a conflict of interest was sufficiently apparent in the record at the time of the revocation hearing to impose a duty under *Cuyler v. Sullivan, supra*, requiring the trial court to inquire further.[7]

Under the principles discussed above, it is clear that there are two areas of focus for this Court in evaluating petitioner Walker's contention that representation by his trial attorney of co-defendants with conflicting interests denied him constitutionally required assistance of counsel.

■■■ First, only if a timely objection was made to multiple representation without adequate response from the trial court may this Court presume that actual conflicts alleged here resulted in ineffective assistance of counsel.[8] Second, if there was not a timely objection to multiple representation and no special circumstances existed that required the court to make its own inquiry, then petitioner Walker must show that an actual conflict of interest adversely affected his attorney's performance. In neither case is it necessary for petitioner to demonstrate prejudice. *See Bishop v. Parratt*, 509 F.Supp. 1140 (D.C.Neb.1981). The last standard is problematical in that it seems difficult to draw the line between material prejudice and actual conflict adversely affecting the adequacy of representation. *See Parker v. Parratt*, 504 F.Supp. 690, 698–7000 (D.C.Neb.1981), *see also Conflicts of Interest in the Legal Profession*, 94 Harv.L.Rev. 1244, 1390 (1981). If there is no objection, *Sullivan*, when read in light of *Holloway* and *Wood*, seems to require the finding of an actual conflict which caused

---

7. The Court pointed out that the trial court must have assumed the employer would pay the fines because of their large amount. The trial court also was aware that the defendants' trial counsel was paid by the employer and was pressing a constitutional attack rather than arguing for leniency that might have resulted in reductions in or deferrals of the fines. *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981).

8. The Sixth Circuit held in *Thacker v. Bordenkircher*, 590 F.2d 640 (6th Cir. 1979), *cert. denied*, 442 U.S. 912, 99 S.Ct. 2827, 61 L.Ed.2d 278 (1979), that mere potential for conflict of interest, particularly where there is no objection to multiple representation, does not amount to a Sixth Amendment violation. In *Cuyler v. Sullivan, supra*, 100 S.Ct. at 1718, the Supreme Court stated:

> *Holloway* reaffirmed that multiple representation does not violate the Sixth Amendment unless it gives rise to a conflict of interest. See 435 U.S., at 482, 98 S.Ct., at 1177. Since a possible conflict of interest inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial. But unless the trial court fails to afford such an opportunity, a reviewing court cannot presume that the possibility for conflict has resulted in ineffective assistance of counsel.

Thus, *Holloway* appears to permit a presumption that an actual conflict resulted in ineffective assistance where the trial court failed to adequately investigate multiple representation after timely objection.

the trial attorney to do or fail to do something which was contrary to his client's interests without requiring calculations as to how much that conduct might have contributed to conviction in light of the entire record.

■ Under the first standard, requiring an objection to multiple representation at trial, petitioner Walker is entitled to relief. Although his trial attorney might have done more than move for a severance, the motion was sufficient to put the trial court on notice that the co-defendants had conflicting interests. The fact that Mr. Hoats was an inexperienced attorney facing his first jury trial in criminal court should have encouraged the court to explore the possibility of conflicting interests in both the plea bargaining stage and over the issue of possession of the pistol. The trial court failed to notice, as did the state appellate court, the actual conflict which arises when one defendant wishes to plead guilty under an agreement contingent on acceptance by both defendants, and the other does not. However, the contingent nature of the offer in this case placed Mr. Hoats in an apparent conflict. He could not attempt to obtain a better deal for Walker or avoid the contingency nature of the offer by tendering Walker's testimony against Brock, nor could he provide professional advice concerning acceptance or rejection of the plea offers. Clearly, each defendant had different interests to consider in deciding whether to accept the plea agreement. Yet, an attorney in Mr. Hoats' position could not fully advise each defendant regarding these interests without fear that a decision to plead or not to plead could put subtle pressure on the other defendant. As the Supreme Court pointed out in *Holloway*:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, in this case it may well have precluded defense counsel for Campbell from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. *Id.* 435 U.S. at 489–491, 98 S.Ct. at 1881–1882.

Thus, the Supreme Court in *Holloway* contemplated that conflicts of interest amounting to ineffective assistance of counsel occur at the plea-bargaining stage. Given the large number of criminal cases disposed of in plea negotiations, the criminal defendant is no less entitled to the undivided loyalty of his attorney at this stage than at trial.[9] Petitioner Walker was deprived of representation free of conflict in the plea-bargaining stage.

Had the trial court conducted an adequate investigation after Mr. Hoats' motion for severance instead of pushing for trial, it would not only have recognized the conflict inherent in the plea-bargaining process but would have discovered the conflict which ultimately prevented the trial attorney from adequately cross-examining the victim on the issue of possession of the pistol and from arguing that the victim was unclear as to who actually possessed the weapon.[10] Under *Key v. State*, 563 S.W.2d 184 (Tenn. 1978), only one defendant could have been convicted for possession of the pistol unless the one not carrying the pistol had guilty

---

9. *See*, e. g., *Alvarez v. Wainwright*, 522 F.2d 100 (5th Cir. 1975), in which the Court held that an attorney rendered ineffective assistance by representing conflicting interests in advising a client not to accept a plea bargain offer and against testifying at trial because it would harm his co-defendant who was represented by the same attorney.

10. The trial judge did not have the benefit of *Holloway's* interpretation of *Glasser* as requiring adequate investigation of objections to multiple representation. *Holloway v. Arkansas, supra*, 435 U.S. at 488, 98 S.Ct. at 1180. The

case was tried on the 9th and 13th of February, 1978, and *Holloway* was not decided until April 3, 1978. However, the ABA project on Standards Relating to the Administration of Criminal Justice, The Function of the Trial Judge § 3.4(b), p. 171 (1974), could have provided guidance. It states:

> Whenever two or more defendants who have been jointly charged, or whose cases have been consolidated, are represented by the same attorney, the trial judge should inquire into potential conflicts which may jeopardize the right of each defendant to the fidelity of the counsel.

knowledge. Indeed, Brock's conviction under the weapon charge was reversed because of the lack of evidence connecting Brock to the Weapon. See note 1, *supra*. However, the identification testimony linking Walker to the weapon is far from overwhelming.[11]

■ The trial attorney's motion for a severance was sufficiently timely and should have caused the trial judge to investigate the conflicting interests of the defendants.[12] The motion was made during voir dire of the jury as soon as petitioner's attorney fully appreciated the existence of the conflict. Although this Court fully understands the need for a trial judge to protect the docket from needless last minute delays caused by frivolous defense motions, there is no evidence here that suggests this severance motion was made for the purpose of delay.[13] Had the motion been granted, trial of the defendant still represented by Mr. Hoats could have commenced without inconvenience to the witnesses or jury or prejudice to the state. Docket control never justifies denying a defendant the right to assistance of counsel. See *Linton v. Perini, Superintendent*, 656 F.2d 207 (6th Cir. 1981).

Having determined that petitioner's counsel timely objected to multiple representation and that the trial court failed to adequately investigate the actual conflicting interest of the co-defendants, this Court has no choice but to find that petitioner Walker was denied the effective assistance of counsel guaranteed by the Sixth Amendment. It is not proper to speculate on the degree of prejudice resulting from these conflicts. The Supreme Court in *Holloway* recognized the futility of such a task:

> It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation. *Id.* 435 U.S. at 491–492, 98 S.Ct. at 1182.

■ Having determined that issuance of the *writ* would be proper under the standard employed when a timely objection is made to multiple representation, it would be possible to end this analysis. However, even if no timely objection had been made requiring inquiry by the trial court, peti-

---

**11.** The victim's testimony at trial was that when he surprised the two young men in his house, both of them said, "stick 'em up." (tr. pp. 14, 65). He testified that the short one had the pistol and the taller one had a hammer. (tr. p. 16). The victim pointed out at trial the defendant that was the short one, however, the record does not reflect which defendant was singled out. (tr. p. 29). At the preliminary hearing the victim stated he did not know which of the individuals shot at him. (tr. pp. 201–203), although he testified at trial that he was engaged in a scuffle with the two defendants when the first shot was fired. (tr. p. 19), and that Walker fired the pistol in the house. (tr. p. 71). Walker testified at the evidentiary hearing that on the day he was arrested with Brock, he was wearing platform shoes which made him equal in height to Brock. The record at trial reveals no cross-examination exploiting uncertainties or inconsistencies in the victim's testimony as to who possessed or fired the pistol. (tr. pp. 31–93).

**12.** A severance motion alone was sufficient to point to the conflict of interest issue. As the Supreme Court pointed out in *Sullivan*, separate trials for co-defendants may significantly reduce the potential for a divergence in co-defendants' interests. *Id.* 100 S.Ct. at 1717–1718; *see*, e. g., *Robinson v. Parratt*, 546 F.2d 764 (8th Cir. 1976); *Bishop v. Parratt*, 509 F.Supp. 1140, 1143 (D.C.Neb.1981); *State v. Alexis*, 21 Wash. App. 161, 584 P.2d 963, 967 (1978). Moreover, Mr. Hoats testified that he was unable to pursue the conflict of interest issue by explaining the conflicts or making a motion to withdraw because of the judge's eagerness to proceed with the trial.

**13.** *See*, e. g. *United States v. Morando*, 628 F.2d 535 (9th Cir. 1980), in which the Court held that a conflict of interest discovered by the attorney the day before trial was disclosed in a sufficiently timely manner to the trial court in a motion to withdraw on the morning of trial.

tioner's right to counsel was violated under the second standard articulated in *Sullivan*. A careful analysis of the conflicts presented in discussion above leads the Court to conclude that these were actual conflicts which adversely affected petitioner's representation. The conflicting interests actually existed in the plea negotiation stage and on the issue of who had possession of the pistol. The record and testimony at the evidentiary hearing support the conclusion that, as a result of these conflicts, petitioner's attorney could not fully advise petitioner and negotiate on his client's behalf in the plea negotiations and that he failed to pursue effectively any uncertainties or inadequacies in identification of which individual possessed the pistol. Again, the degree to which petitioner Walker was prejudiced by his attorney's actions or failures to act is not a consideration. That these conflicts were sufficient to adversely affect his representation in some degree is sufficient and it is not possible or proper to attempt to weigh the degree of prejudice which might have resulted. *Cuyler v. Sullivan, supra*, 100 S.Ct. at 1718.[14]

### III.

Petitioner Walker contends that his due process rights were violated by improper jury sentencing under Tenn.Code Ann. § 39–4914. After his conviction, the Tennessee Supreme Court issued an opinion construing this statute as not defining a substantive offense but providing only additional punishment for an individual who uses a firearm in committing or escaping from a felony. *State v. Hudson*, 562 S.W.2d 416 (Tenn.1978). In that case, the Court held that § 39–4914 is applicable only where the case does not otherwise provide for an increase in punishment for use of a firearm in committing a felony. In petitioner Walker's case, the Tennessee Supreme Court found that Tenn.Code Ann. § 39–903

contains an enhancement provision that should have applied in his case instead of § 39–4914. *Walker v. State, supra.* The Court reasoned that this error was harmless because if the proper enhancement statute had been read to the jury the minimum sentence he could have obtained would have been 10 years instead of the eight he received as a result of the error. *See* note 2, *supra*.

■ This Court agrees with the reasoning of the Tennessee Supreme Court that error in jury sentencing under the wrong statute was harmless. Both § 39–4914 or § 39–903 provide for mandatory increases in the sentence if the jury finds the defendant employed a firearm. The jury here reached that conclusion. Conviction under the proper statute at the very least would have increased petitioner's minimum sentence by two years. Thus, the error was harmless.

Petitioner's reliance on *Hicks v. Oklahoma*, 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980) is misplaced. In *Hicks*, the state appellate court upheld the defendant's 40 year sentence which had been imposed under a habitual criminal statute subsequently declared unconstitutional. The state court upheld Hicks' sentence because it was within the range of sentences available to the jury under a statute simply providing a sentence of not less than 10 years. The Supreme Court held in *Hicks* that the state court violated due process by upholding the sentence merely because the jury might have imposed a forty year sentence under the proper statute. The Court reasoned that the jury might, if properly charged, have sentenced the defendant to a lesser term between ten and thirty-nine years. *Hicks v. Oklahoma, supra*, 100 S.Ct. at 2229–2230. Obviously, in petitioner Walker's case the jury, having determined he used the firearm, could not have sentenced him to less than eight years under the prop-

---

**14.** Application of these principles to convictions obtained prior to *Sullivan* is proper. *See,* e. g., *Ross v. Heyne*, 638 F.2d 979 (7th Cir. 1978); *Harper v. McDonald*, 512 F.Supp. 368

(D.C.D.C.1981); *Bishop v. Parratt*, 509 F.Supp. 1140 (D.C.Neb.1981); *Smith v. Anderson*, 505 F.Supp. 642 (E.D.Mich.1980).

er statute, but, rather would have been bound by a mandatory minimum sentence of 10 years. Thus, while use of the improper enhancement statute was disadvantageous to the defendant in *Hicks* by eliminating the possibility of the sentence provided in the correct sentencing provision, the use of the improper statute here was advantageous to Walker by providing a minimum sentence two years less than that mandated by the correct statute.

An appropriate Order will be entered contemporaneously with this Memorandum.

APPENDIX

(TWELVE (12) JURORS HAD BEEN PLACED IN THE JURY BOX, QUALIFIED AND THE STATE WAS IN THE PROCESS OF VOIR DIRING THE JURORS WHEN THE FOLLOWING PROCEEDINGS WERE HAD, TO–WIT:)

MR. HOATS: If the Court please, I know this is unusual, but could we dismiss the Jury for one second? I'd like to make a motion in front of the Court before we proceed any further.

THE COURT: Members of the Jury, counsel for the defendant has asked you to be excused. You will step out for just a moment with the Court Officers, please.

(WHEREUPON the Jury retired from open Court, and the following proceedings were had, to-wit:)

THE COURT: Yes, sir, Mr. Hoats.

MR. HOATS: If the Court please, Mr. Kelvin Walker is being represented by Mr. Omer on a burglary—one or two burglary cases—and Mr. Nimmo on a possession charge. The defendant has informed me that—and I conferred with the attorney—and the defendant Walker, at this time, wishes to plead guilty to the offer that the District Attorney General has offered.

THE COURT: Both defendants?

MR. HOATS: No, the defendant, Weldon Brock, does not wish to plead guilty.

THE COURT: All right, sir. Then we will keep them together and when the time comes he can enter his plea before the Jury. Yes, sir. Bring the Jury back, please.

MR. NIMMO: If Your Honor please, may I approach counsel for just a moment?

THE COURT: Sure.

(BRIEF PAUSE IN THE PROCEEDINGS)

MR. HOATS: At this—at this point, if the Court please—I wasn't clear on this, but we did want to make a motion to sever these cases and—and let—

THE COURT: I don't know. Does the State have any objection to a severance?

GEN. BARNARD: If Your Honor please, I—I hate to go into the State's offer, but the offer was made on the condition that they both plead. If they both don't plead, the State's not willing to sever.

THE COURT: All right, sir. We go to trial then, Gentlemen. Bring the Jury in, please.

(WHEREUPON the Jury returned to open Court, and the voir diring of the Jury was continued.)