[No. 4992-9-II.  Division Two.  July 27, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. BEN LINGO, ET AL, *Appellants.*

*E. Thompson Reynolds* and *Jerry Stimmel,* for appellants.

*Robert K. Leick, Prosecuting Attorney,* and *Grant Hansen, Deputy,* for respondent.

PETRIE, J.—Defendants, Ben and Michael Lingo, appeal from convictions of first degree rape. Both Ben and Michael were represented by the same trial counsel. After a guilty verdict on first degree rape, Michael obtained substitute counsel for purposes of appeal. Both defendants assign as error (1) whether a search warrant was overly broad and (2) whether the admission of photographs of the victim's injuries was in error. Additionally, Michael argues on appeal that he was denied his right to speedy trial and that the dual representation of both defendants constituted ineffective assistance of counsel. We find no error and, accordingly, affirm both convictions.

The complaining witness asserted that on the evening of March 18, 1980 she was grabbed outside a bar in Newberg, Oregon and forced into the cab of the Lingos' camper truck. She contended she was beaten by both Ben and Michael, and then driven to Skamania County, Washington where both defendants raped her. The victim escaped from the parked camper the morning after the assault while the defendants were asleep. She subsequently led Skamania County authorities back to the camper where both defendants were awakened and placed under arrest for assault and rape.

A search warrant issued on March 20 commanded the police to search the camper truck

For any and all evidence of assault and rape including but not limited to bedding, clothing, female clothing, blood stains, semen stains, and residue or other residue of sexual activity; human hair and any and all weapons that may have been used in the commission of said crimes.

A motion to suppress evidence seized in the search because of the overly broad scope of the warrant was denied.

On March 20, defendants first appeared in court. A trial date of May 12 was set. On April 25, the State, pursuant to the then effective CrR 3.3(b), requested a continuance of the trial date in the due administration of justice because of a backlog in the work of the State Crime Laboratory and the lab's inability to complete an analysis of the forensic evidence by the May 12 trial date. On April 30, trial counsel filed a response opposing the State's motion for continuance on CrR 3.3 speedy trial grounds. Subsequently, by agreement, trial was set for May 28.

On May 22, both defendants signed written waivers of their right to speedy trial until July 14. Later the same day, Michael and Ben jointly sent a handwritten letter to the trial judge contending that they misunderstood the waiver and thought trial was to start on June 14. They strenuously objected to any waiver of speedy trial past June 14, informing the trial court:

. . . under no condition will we give up our right to a fast and speedy trail [sic] beyond June 14–80.

We believed at the time of signing the waiver to speedy trial, that our court date was going to be June 14–80.

We are in no way going to give up our constituational [sic] right to a fast and speedy trial beyond that date June 14–80.

Furthermore, defendants filed a petition for release and requested a hearing on the issue of the waiver. A hearing was held on May 29 to determine the effectiveness of defendants' written waivers. The trial court, after hearing from both Michael and Ben, decided that defendants did intend to waive their rights to a speedy trial, but the only "question is when it is effective to." The trial court found

that Michael and Ben had intended to waive until June 14 and therefore set the trial date on June 18, the first available date after June 14.

Trial commenced on June 18. Over trial counsel's objection that they were gruesome and overly prejudicial, five photographs of the victim and her injuries were admitted. The trial court first excised portions of two of the photographs before admitting them. The photos of the victim depicted severe swelling, bruises, and lacerations on her face, and abrasions and bruises above her breasts and her knees. The photographs were taken at the request of Skamania County police authorities by the physician who treated the victim at the hospital.

Michael, testifying at trial, denied having any sexual contact with the victim. Michael further asserted that both defendants had rescued the victim from a beating by an unidentified person, and that the victim then asked if she could accompany both defendants on a trip from Newberg, Oregon to Goldendale, Washington. Ben did not testify. More than a year after entry of the judgment and sentence, Michael obtained new counsel who filed a "motion for relief from judgment" pursuant to RAP 7.2(e), asserting ineffective assistance of counsel at trial because of dual representation of both defendants. The motion was denied. Though no "separate review" has been filed as contemplated by RAP 7.2(e), we granted Michael's motion to file a supplemental brief on this issue and also the speedy trial issue.

Defendants argue that the warrant to search the camper was so broad as to amount to a license to seize anything authorities desired. We cannot agree. A search warrant need describe the items to be seized only with such particularity as is reasonable and practical under the circumstances. *State v. Withers,* 8 Wn. App. 123, 504 P.2d 1151 (1972). Furthermore, a search warrant is not constitutionally defective when it sets certain limits on what is to be seized and thus does not permit a general exploratory search. *State v. Salinas,* 18 Wn. App. 455, 569 P.2d 75 (1977).

The warrant involved here was not general or overly broad. Limits were set forth explicitly in the warrant itself on the items to be seized. The wording "any and all evidence" was specifically limited to the crimes of assault and rape. Furthermore, additional restrictions were incorporated in the warrant by the listing of possible items such as female clothing, bedding, and blood and semen stains, and thereby provided guidelines for the officers conducting the search. These limitations adequately prevented any danger of a general search. The description of the items subject to possible seizure was sufficiently particularized to preclude an officer from seizing the wrong property. *State v. Withers, supra.* Though the warrant might have more precisely described the items to be seized, we do not find it constitutionally defective.

We next turn to the speedy trial issue raised by defendant Michael Lingo. Essentially we agree with the trial court that the issue is not whether the defendants waived their right to speedy trial; they did. The proper inquiry is reduced to whether the trial date of June 18 was allowed under CrR 3.3. Defendants argue that the June 18 trial date is outside the 60–day period set forth in former CrR 3.3(b)(2) and that charges against the defendants must automatically be dismissed because of the strict compliance which the rule demands, citing *State v. White,* 94 Wn.2d 498, 617 P.2d 998 (1980).

It is clear that the defendants intended to waive their trial date until June 14 when they executed the written waivers on May 22. This conclusion is supported by examining the letters the defendants themselves filed with the court[1] and by a review of the transcript of the May 29 hearing.[2] Merely because the defendants misunderstood

---

[1]The letter of May 22, 1980 to Skamania County Superior Court from Ben and Michael Lingo is replete with references to June 14 as the date understood to be the trial date. This concern with June 14 is indicated by the excerpts set forth earlier in the opinion.

[2]The following excerpt of the trial court's opinion indicates the resolution of

the written waiver's date of July 14 as June 14, we cannot allow them now to assert that there was never any waiver intended at all.

■ June 14 was a Saturday. The next *possible* trial date was Monday, June 16, but the trial court continued the trial date to Wednesday, June 18, the earliest *available* date. We find that the rule was complied with because the date set was the earliest available date even though it was beyond June 14, the date indicated by the waiver. The trial court's action was entirely proper under the authority of former CrR 3.3(f)(2) which provided that a court on its own motion "may continue the case when required in the due administration of justice and the defendant will not be substantially prejudiced in the presentation of his defense. The court must state its reasons therefor." 90 Wn.2d 1153 (1978). The trial judge indicated in open court during the May 29 hearing that he was setting June 18 as the trial date because it was the earliest available date after June 14, and defense counsel was unavailable for trial on June 16 or 17. We cannot say that Michael Lingo was substantially prejudiced by the June 18 trial date.

■ Defendants next challenge the admission of photographs of the victim and her injuries as overly prejudicial because of their gruesome nature. Photographs are not inadmissible as evidence merely because they are gruesome. *State v. Griffith*, 52 Wn.2d 721, 328 P.2d 897 (1958). Photographs which accurately represent the true state or condition of the thing depicted are admissible if they have

---

the waiver problem:

> The Court: My perception of what has occurred and what the Court has before it in terms of protection of the rights of the defendant is that they, because of defense counsel's representations and his discussions with his clients concerning the need for some additional time to prepare for trial, that the defendants intended to waive their speedy trial until June 14th. That was the intention at the beginning.
>
> Once they found that was not true, then now they want to go back to square one. There's been no assertion that they were somehow pressured or otherwise coerced into signing the waiver of speedy trial. The question is when it is effective to.

probative value upon some element of the crime charged. *State v. Adams,* 76 Wn.2d 650, 458 P.2d 558 (1969). The treating physician testified that the photographs accurately depicted the victim's injuries immediately after the rape. The photographs also are relevant evidence of the element of forcible compulsion involved in first degree rape. Admissibility is subject to an exercise of the trial court's discretion in determining whether the probative value of the photographs outweighs the prejudicial effect. *State v. Haga,* 8 Wn. App. 481, 507 P.2d 159 (1973). Though the photographs may arguably be classified as slightly gruesome, the trial court properly exercised its sound discretion in admitting them. We find no error.

■ Lastly, we examine Michael's assertion that he was denied effective assistance of counsel because he and Ben were both represented by the same trial counsel. In cases of dual representation, *i.e.,* where codefendants are represented by the same trial counsel, counsel and the court must be mindful of avoiding conflicts which substantially prejudice the rights of one codefendant in relation to another. A defendant in a criminal case is denied effective assistance of counsel in violation of the Sixth Amendment when his counsel also represents a codefendant whose interests conflict with or are adverse to those of the defendant, and trial strategy in the best interest of one defendant would be detrimental to the other. *State v. Alexis,* 21 Wn. App. 161, 584 P.2d 963 (1978).

While we continue to subscribe to the rule we set forth in *Alexis,* we must emphasize it is subject to two critical curtailments which defendants who assert ineffective assistance of counsel must show: (1) The trial court must be made aware of any actual or potential conflicts in the dual representation, *State v. Peyton,* 29 Wn. App. 701, 630 P.2d 1362 (1981); *Cuyler v. Sullivan,* 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980), therefore the burden rests on trial counsel to raise appropriate concerns and objections;

and (2) when no objection is raised, *actual* conflicts of interest must be readily apparent in order for the claim of ineffective assistance of counsel to be successful. *State v. Peyton, supra; Cuyler v. Sullivan, supra.*

Despite the suggestion in *Alexis* that the trial court has a duty to inquire as to possible conflicts in representation, *State v. Alexis,* 21 Wn. App. at 167–68, this duty is only triggered when trial counsel raises the issue of potential conflicts with the trial court. Though no absolute duty to inquire arises short of this advisement by trial counsel, there is nothing improper in the trial court's electing to make an independent inquiry. *See generally* 71 J. Crim. L. & Criminology 529 (1980). We note that in *Alexis* the trial court was advised of problems with the joint representation. Here there is no indication in the record that the trial court was advised of any problems until Michael's motion for relief from judgment which was filed after the matter had been on appeal in this court for more than a year.

The fact of dual representation, by itself, absent a claim of actual conflict, does not give rise to an inference of ineffective assistance of counsel. *Alexis* does not create a right to automatic reversal for codefendants who proceed through trial without making an objection to the trial court. When trial counsel fails to advise the trial court of potential conflicts, a permissible inference arises that no conflicts in the representation of codefendants exist and that trial counsel, mindful of his ethical obligations, has adequately guarded his joint clients' interests and has not placed the interest of one above the other. *Cuyler v. Sullivan,* 446 U.S. at 346–47. Similarly, nothing in the Sixth Amendment requires the trial court to initiate an inquiry into possible conflicts, *Cuyler v. Sullivan,* 446 U.S. at 346. While joint representation of defendants is to be discouraged because of the possibility of conflicts of interest cropping up even when the greatest precautions are taken to avoid them, *State v. Peyton,* 29 Wn. App. at 716, it remains the burden

of trial counsel to guard against conflicts and advise the trial court of them. The trial judge cannot be expected to foresee potential conflicts of which he has not been warned nor of those not even foreseen by defense counsel.

To prevail here, defendant Michael Lingo must "demonstrate that an actual conflict of interest [between his defense and that of his codefendant Ben] adversely affected his lawyer's performance." *Cuyler,* 446 U.S. at 348. Possibility of conflicts of interest arising from multirepresentation is not sufficient to impugn a criminal conviction. *Cuyler v. Sullivan,* 446 U.S. at 350. Furthermore, we note that even in *Alexis,* the defendant was able to point to actual conflicts that hampered his defense.

Michael asserts two claimed actual conflicts here: (1) the "relative guilt" of the defendants was different, and (2) the fact that he testified and Ben did not. Michael contends that Ben's participation in the rape was greater than his own. He also contends that Ben's failure to take the stand suggested to the jury that his own testimony was a lie. There is no assertion made by counsel on appeal that trial counsel suggested one defendant testify, and not the other; nor does the record indicate, nor is any argument made, that trial counsel tried to argue one defendant's guilt over the other. There is no trial questioning which suggests that trial counsel was trying to pin blame on the other codefendant. Furthermore, we are disinclined to accept the bold assumption which Michael's counsel on appeal raises; we cannot say that a jury hearing only one codefendant testify and not the other will automatically conclude that the testifying codefendant was lying. While we do not dismiss that outright as a possible construction, it is certainly only one of many stages of belief the jury may assign to the defendant–witness' testimony. The "conflicts" Michael raises do not rise to the level of actual conflicts adversely affecting his lawyer's performance and therefore damaging his effective assistance of counsel. Therefore, we find no error.

Judgments affirmed.

PETRICH, A.C.J., and WORSWICK, J., concur.

Reconsideration denied August 25, 1982.

Review denied by Supreme Court November 22, 1982.