[No. 28004-0-I. Division One. September 25, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. MARY
ANN ROBINSON, *Appellant*.

*John Rolfing Muenster* and *John R. Muenster Inc., P.S.,* for appellant.

*Norman Maleng, Prosecuting Attorney,* and *Amy Jean Freedheim, Deputy,* for respondent.

BECKER, J. — Defense counsel, aware that his former client could put herself at risk by testifying, chose not to call her as a witness. Because her testimony could have helped the defendant, the trial court erred in concluding that the conflict of interest did not adversely affect the attorney's performance.

## I

In early 1989, Seattle Police Detective Darryl Williams,

working undercover, began buying methamphetamine from Steven Blair. Blair told Williams his suppliers were two women named "Bonnie and Mary Ann," whom he frequently referred to as "the girls."

On April 20, 1989, Detective Williams asked if Blair could sell him a pound of methamphetamine. Blair called Williams back and said he had talked to the girls, that they could get it, and that their price was $25,600. When Williams agreed to this price, Blair said the girls would pick up the drugs in Olympia somewhere and bring them to his apartment in Seattle at about 4 P.M. Williams called Blair several times throughout the afternoon and evening. Blair told Williams the girls had not shown up yet because they had "met with some friends" and were "sitting and talking." Finally, Williams said he had to leave and could not wait any longer.

Four days later, on April 24, 1989, Detective Williams called Blair again. They rescheduled the transaction for 4 P.M. that afternoon. Williams went to Blair's apartment, where Blair introduced him to Mary Ann Robinson, Bonnie Lindsay, and others. Robinson and Lindsay were sitting on a couch in the living room. A small blue and white cooler was on the floor at the end of the couch.

According to Williams' trial testimony, he said to Robinson, " 'I am sorry that things didn't work out the other night. I had to take off. . . .' " Robinson responded, " 'Well, if I had known that you were in such a hurry, then I would have just brought the stuff, because I was just sitting talking to friends.' "

Blair came out of an adjoining office with a ziplock baggie containing a pound of methamphetamine and handed it to Williams. Shortly thereafter, by prearranged signal, an anti-crime team forced entry into Blair's apartment and arrested everyone there. The police seized the pound of methamphetamine and the blue and white cooler. The contents of the cooler included bags with methamphetamine, narcotics paraphernalia, baggies, money bands, some small purses and a tampon holder. Several of the

bags had notations of their weight, dates, and times, suggesting they were packaged for distribution and sale. In searching Robinson, the police found in her pocket a syringe containing methamphetamine.

The State initially charged Robinson and Blair with possessing methamphetamine with intent to manufacture or deliver. Mary Ann Robinson obtained counsel. When the State later charged Bonnie Lindsay, the same attorney agreed to represent her also. Steven Blair pleaded guilty. After some discussions with defense counsel, the State obtained a dismissal of charges against Bonnie Lindsay. Mary Ann Robinson went to trial, was convicted, and received an exceptional sentence of forty-eight months.

### Sufficiency of the Evidence

■ Robinson was not in actual possession of the methamphetamine in Blair's apartment. She claims the evidence of her constructive possession was insufficient to convict. The question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found constructive possession beyond a reasonable doubt. *See State v. Porter*, 58 Wn. App. 57, 60, 791 P.2d 905 (1990).

■ A defendant has constructive possession of the drugs if she has dominion and control over them. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994); *State v. Spruell*, 57 Wn. App. 383, 385, 788 P.2d 21 (1990). The court looks at the totality of the situation to determine if the jury can reasonably infer that the defendant had dominion and control. *Porter*, 58 Wn. App. at 60. The State must prove more than a passing control; it must prove actual control. *Staley*, 123 Wn.2d at 801. Mere proximity to the drugs and evidence of momentary handling will normally not support a finding of constructive possession. *Spruell*, 57 Wn. App. at 388-89.

The State relies in part on evidence that Robinson demonstrated sophisticated knowledge about the sources and characteristics of methamphetamine when interviewed by

a detective after she was arrested. Such evidence, while tending to depict Robinson as a dealer rather than a user, does not independently prove that she was in possession of the drugs on April 24.

The critical evidence tying Robinson to the drugs was the testimony of Detective Williams that when he greeted her on April 24 with regret that "things didn't work out" on April 20, Robinson responded with, " 'Well, if I had known that you were in such a hurry, then I would have just brought the stuff, because I was just sitting talking to friends.' " This remark tends to show that she was in control of the drugs when they were brought into the apartment on April 24 and that she intended to complete the transaction previously arranged for April 20.

Robinson argues that even if she did bring the drugs into the apartment, the evidence remains insufficient because by the time the arresting officers arrived, she had turned possession of the drugs over to Blair. We disagree. The evidence shows more than past momentary handling by a visitor as in *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). Viewing the evidence in the light most favorable to the State, a rational trier of fact could have found, beyond a reasonable doubt, Robinson had dominion and control over the drugs.

### Conflict of Interest

After the sentence was imposed, Robinson, represented by new counsel, moved for a new trial, alleging that the defense trial attorney had an actual conflict of interest in representing her and Lindsay and that this conflict adversely affected his representation of Robinson before and during trial. The court took testimony from the defense trial attorney and others at a hearing, then denied the motion for a new trial. Robinson appeals from that order.

According to Robinson's argument, the conflict first manifested itself during pretrial negotiations. Blair's statement to Detective Williams that his suppliers were "Bon-

nie and Mary Ann" was admissible against Mary Ann because there was independent evidence linking her to a conspiracy with Blair—her remark that she "would have just brought the stuff" earlier. *See* ER 801(d)(2)(v). Blair's statement was not admissible against Bonnie Lindsay to identify her as a supplier because the State had no other evidence implicating her. Accordingly, the State agreed to dismiss the charges against Lindsay, but not against Robinson. Robinson argues that her attorney at this stage should have divulged the information that Lindsay, not she, brought the cooler into Blair's apartment and should have generally engaged in a strategy of directing blame toward Lindsay.

Robinson claims the conflict next manifested itself when her attorney decided not to call Lindsay to testify at Robinson's trial. Lindsay told the defense trial attorney during an early interview that she, not Robinson, initially carried the cooler into Blair's apartment; the cooler contained Pepsi, not drugs, when Lindsay brought it in; and Robinson did *not* make any remark to Detective Williams about how she "would have just brought the stuff" on April 20 if she had known he was in a hurry to get it. Robinson contends such testimony, if elicited from Lindsay at trial, would have strengthened the argument that Robinson was not responsible for the drugs in Blair's apartment. Either Bonnie Lindsay brought them or someone else put them into the cooler after Bonnie and Mary Ann arrived.

 The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This guarantee is violated if the testing of the prosecution's case "loses its character as a confrontation between adversaries." *United States v. Cronic*, 466 U.S. 648, 656-57, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). The right to counsel is so basic to a fair trial that deprivation of it can never be treated as harmless error. *Chapman v. California*, 386 U.S. 18, 23 & n.8, 87 S. Ct. 824, 17

L. Ed. 2d 705, 24 A.L.R.3d 1065 (1967) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799, 93 A.L.R.2d 733 (1963)).

■■ Reasonably effective assistance of counsel includes "a duty of loyalty, a duty to avoid conflicts of interest." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing." *Holloway v. Arkansas*, 435 U.S. 475, 489-90, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978).

■■ Joint representation is not a per se violation of the right to effective assistance of counsel. *Holloway*, 435 U.S. at 482; *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980); *State v. James*, 48 Wn. App. 353, 365, 739 P.2d 1161 (1987); *State v. Lingo*, 32 Wn. App. 638, 645, 649 P.2d 130, *review denied*, 98 Wn.2d 1005 (1982). But if the defendant raises an actual or potential conflict by objection at trial, the trial court errs when it fails "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel." (Footnote omitted.) *Holloway*, 435 U.S. at 484; *In re Richardson*, 100 Wn.2d 669, 676, 675 P.2d 209 (1983). If no objection to joint representation is raised until after trial, the presumption of prejudice does not arise unless the defendant is able to demonstrate that "an actual conflict of interest adversely affected his lawyer's performance." (Footnote omitted.) *Cuyler*, 446 U.S. at 348; *James*, 48 Wn. App. at 365; *Lingo*, 32 Wn. App. at 646.

■ Actual conflict of interest, as opposed to a hypothetical possibility, is evidenced "if, during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action." *Sullivan v. Cuyler*, 723 F.2d 1077, 1086 (3d Cir. 1983). If the same strategic choice serves the best interests of both clients, there is no actual conflict. *State v. Martinez*, 53 Wn. App. 709, 716, 770 P.2d 646 (1989). The actual conflict must be "readily apparent." *James*, 48 Wn.

App. at 365. The appellant must point to specific instances in the record, *James*, 48 Wn. App. at 366, suggesting the attorney was caught in a "struggle to serve two masters." *Glasser v. United States*, 315 U.S. 60, 75, 62 S. Ct. 457, 86 L. Ed. 680 (1942). Undivided loyalty is missing "where counsel must slight the defense of one defendant to protect another." *James*, 48 Wn. App. at 369.

 To demonstrate that the lawyer's performance was "adversely affected" by the actual conflict, the defendant must show the conflict "hampered his defense." *Lingo*, 32 Wn. App. at 646. The conflict "must cause some lapse in representation contrary to the defendant's interests," *Sullivan*, 723 F.2d at 1086, or have "likely" affected counsel's conduct of particular aspects of the trial or counsel's advocacy on behalf of the defendant. *United States v. Miskinis*, 966 F.2d 1263, 1268 (9th Cir. 1992). "This showing of some adverse consequence is necessary because an attorney may harbor a conflict but nevertheless provide exemplary representation." *Frazer v. United States*, 18 F.3d 778, 787 (9th Cir. 1994) (Beezer, J., concurring). "[W]ithout an assertion that counsel's performance was deficient, it is impossible to demonstrate that counsel's conflict 'adversely affected' counsel's performance." *State v. Hatfield*, 51 Wn. App. 408, 414 n.3, 754 P.2d 136 (1988).

The trial court here characterized the *Cuyler v. Sullivan* test—an actual conflict adversely affecting the attorney's performance—as "a little like having to prove the first prong of the [*Strickland v. Washington*] test for ineffective assistance of counsel but not the second." The court further remarked it is "worth remembering" that in cases decided under the *Strickland* test for ineffective assistance, "the court starts with a strong presumption of adequate assistance of counsel."

The *Cuyler v. Sullivan* test was developed for situations where counsel has breached the duty of loyalty. The *Strickland* test, announced four years later, was developed for claims where counsel's performance is deficient, *aside*

*from* conflict of interest situations. *See Strickland*, 466 U.S. at 692-93. Despite the close relationship between the holdings of the two cases, their analysis of ineffectiveness does not merge because they test for different types of ineffectiveness. Under *Strickland*, a complaint that an attorney erred in failing to call a certain witness is ordinarily rejected as tactical. *State v. Allen*, 57 Wn. App. 134, 140, 788 P.2d 1084 (1990). Whether a witness will help or hurt the defendant's case depends greatly on factors and characteristics of the witness that the attorney is in a far better position to assess than a reviewing court. *See State v. Piche*, 71 Wn.2d 583, 590-91, 430 P.2d 522 (1967). But when an attorney's loyalty is divided between a witness and the defendant, the attorney's decision not to call that witness readily leads to reversal under the *Cuyler v. Sullivan* test and can almost be said to epitomize it. In reviewing the decision on remand of that case, the Third Circuit did not assume that counsel's failure to call the witness Carchidi (a codefendant represented by the same attorney) was a tactical choice within the range of professional competence. Rather, the court observed the impact on counsel's performance: "By choosing to rest the defense in consideration of the possibility of the incrimination of Carchidi, it is clear that the attorneys failed to put forth their best case for Sullivan. There is no question that their performance was less than it would have been had they not been representing Carchidi as well." *Sullivan* 723 F.2d at 1087.

 This court will reverse the trial court's decision on a motion for a new trial only for an abuse of discretion or when the decision is predicated on an erroneous interpretation of the law. *State v. Carlson*, 61 Wn. App. 865, 871, 812 P.2d 536 (1991), *review denied*, 120 Wn.2d 1022 (1993). An abuse of discretion exists when the trial court acted on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Robinson has properly preserved review under RAP 10.3(g) by assigning error to the findings of fact entered by

the court on her motion as well as to its denial of her motion for a new trial. Findings of fact are not required on the denial of a motion for a new trial. *See* CrR 7.6(d). However, findings are helpful to allow for a meaningful review of the trial court's decision. *State v. Hunnel*, 52 Wn. App. 380, 382, 760 P.2d 947 (1988). We review the challenged findings to determine the basis for the decision.

The trial court in the present case, in a written memorandum opinion, concluded there was no actual conflict during plea negotiations because the defense trial attorney did nothing that benefited Lindsay to the detriment of Robinson. While recognizing that Robinson's attorney could have tried to point the finger at Lindsay, the court agreed with the attorney that such a defense during the plea negotiation stage "would not have been persuasive or credible to anyone." The court noted that Robinson's post-arrest statements, in which she insisted that she did not want Bonnie Lindsay to get in trouble, contradicted the reasonableness of a "finger pointing defense."

The trial court found that counsel's election not to call Lindsay as a trial witness presented a closer question. Robinson's trial attorney, while admitting the testimony would have been helpful, doubted its importance. He acknowledged his concern that the State might refile charges against Lindsay if she testified. But he did not think that was why he refrained from calling her as a witness at Robinson's trial. He thought he would not have called Lindsay regardless of his previous representation of her. The trial court ultimately accepted his testimony that the decision

> was primarily a decision of strategy not motivated out of concern for the potential negative consequences for Ms. Lindsay, although the potential for such consequences was considered.
>
> [Defense counsel's] choice seems to have been a reasonable decision. For instance, the testimony of Ms. Lindsay would not have affected the state's case, in terms of what evidence

was admitted. . . . Ms. Lindsay's testimony that she didn't know if the cooler contained drugs, though supportive of Ms. Robinson, might well have left Ms. Robinson as the more likely candidate for guilty knowledge, based on her own statements before and after arrest, and the fact that she was in possession of a syringe. The court cannot find that [defense counsel's] strategy was inappropriate or that its very assertion casts doubt on the validity of his testimony in which he asserts that the decision not to call Ms. Lindsay was unrelated to her status as a former client.

The State argues that Lindsay, if separately represented, probably would have pleaded her fifth amendment right to avoid giving self-incriminating testimony. The State thus contends defense counsel's decision not to call Lindsay as a witness had no adverse effect because it is unlikely that Lindsay would ever have given testimony tending to exculpate Robinson. The trial court correctly discounted this inquiry as irrelevant. Such an argument, in addition to being largely speculative, improperly seeks to require the defendant to demonstrate prejudice—i.e., that the outcome of the *case* would have been different without the conflict. *See Sullivan*, 723 F.2d at 1087. The proper focus is on how the conflict affects the performance of *counsel*.

█ We cannot say the trial court abused its discretion in finding the plea negotiations untainted by a conflict of interest. Robinson's contention that her trial attorney necessarily harmed her by advocating for Lindsay is not persuasive. If a possible defense for one client is to blame the other, the defense attorney has a conflict of interest. *State v. Alexis*, 21 Wn. App. 161, 166, 584 P.2d 963 (1978). But the blame-shifting strategy "must have been an option realistically available to trial counsel." *United States v. Mers*, 701 F.2d 1321, 1331 (11th Cir. 1983). Here, the record supports the trial court's finding that a "finger pointing" defense was not a realistic option. Moreover, the record does not supply a basis for believing that a strategy of blaming Lindsay would have cleared or otherwise benefited Robinson in any way, though it may well have

been harmful to Lindsay. Thus, there was no "lapse in representation contrary to the defendant's interests." *Sullivan*, 723 F.2d at 1086.

We conclude otherwise with respect to the trial court's determination that counsel's decision not to call Bonnie Lindsay to testify at trial was a reasonable strategy. The defense attorney's own conclusory testimony that his motivation was tactical cannot be dispositive. The record reflects, and counsel agreed, that Lindsay's testimony at trial would have been helpful to Robinson. The record reflects no tactical reason why it would have been harmful to Robinson's case to present Lindsay's testimony. Therefore, the record demonstrates that the only purpose served by the decision was to protect Lindsay from once again becoming a target of the prosecution—a concern Robinson's trial attorney acknowledged discussing with Robinson before deciding not to call Lindsay.

██ ██ There can be no presumption of effectiveness when an attorney refrains from calling a helpful witness whose interests he is obliged to protect. The trial court must be able to find that counsel had specific and plausible strategic concerns sufficient to overcome the inference that divided loyalty, not strategy, caused counsel to pull his punches. For example, in *Sullivan v. Cuyler* the court rejected three alleged instances of conflicted decision making because the posttrial testimony of the attorneys showed that "their tactical decisions in each of those instances were designed to capitalize on a weak prosecution case and were not premised in any way on a consideration of the co-defendants." *Sullivan*, 723 F.2d at 1086. But with regard to the attorney's decision not to call co-defendant Carchidi as a witness, no tactical justification was identified. The only purpose served by failing to call Carchidi was to protect him from incriminating himself. *Sullivan*, 723 F.2d at 1086-87.

██ ██ Robinson's trial attorney identified no strategic concerns in this case that explain why he held back from obtaining Lindsay's helpful testimony. In a position where

400

he had to "slight the defense of one defendant to protect another," *James*, 48 Wn. App. at 369, counsel experienced an actual conflict of interest adversely affecting his performance. The trial court's finding to the contrary is not supported by the evidence. It thus constitutes an untenable ground for denying the motion for a new trial. Accordingly, the judgment must be reversed and a new trial granted.

The remainder of this opinion has no precedential value and will not be published, but will be filed for public record pursuant to RCW 2.06.040.

COLEMAN and ELLINGTON, JJ., concur.