[No. 20137-6-III.   Division Three.   April 3, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES EDWIN SHAVER, *Appellant*.

*Paul J. Wasson II*, for appellant.

*Timothy S. O'Neill, Prosecuting Attorney*; and *David B. Trefry*, for respondent.

SCHULTHEIS, J. — James Edwin Shaver appeals his judgment and sentence on drug charges. He contends the convictions should be reversed and the case remanded or dismissed due to: (1) ineffective assistance of counsel, (2) erroneous denial of his pretrial motion to suppress, (3) prosecutorial misconduct, and (4) denial of his motion for a new trial. Finding Mr. Shaver received ineffective assistance of defense counsel, we reverse.

FACTS

Mr. Shaver was charged in the Klickitat County Superior Court with: (1) manufacturing methamphetamine (RCW 69.50.401(a)(1)(ii)); (2) conspiracy to manufacture methamphetamine (RCW 69.50.401 and .407); and (3) possession of methamphetamine (RCW 69.50.401(d)). Just prior to trial the State amended the information to add two counts of distribution of a controlled substance to a person under the age of 18 (RCW 69.50.406). Mr. Shaver filed a CrR 3.6 motion to suppress evidence seized as the result of an allegedly defective search warrant. The motion was ultimately denied.

The day trial was to begin, the State informed the court it had added two new witnesses to its list of witnesses for trial. Defense counsel objected on the basis of timeliness and also disclosed he had previously represented both of the new witnesses in criminal matters. Mr. Shaver refused to waive his speedy trial rights and/or any conflict of interest his attorney would have when cross-examining these witnesses. Initially, the court refused to allow the two witnesses to testify at trial. The next day, on the State's motion for reconsideration, the trial court reversed its earlier decision and determined it was proper to allow one of the former clients, Marvin Dean Gregory, to testify. It concluded current case law allowed defense counsel to continue to represent Mr. Shaver even though counsel had represented Mr. Gregory in the past since the subject of Mr. Gregory's prior representation was not substantially related to Mr. Shaver's current charges. Further, the court determined the interests of the former and current clients were not materially adverse. *See State v. Ramos*, 83 Wn. App. 622, 922 P.2d 193 (1996); *State v. Hunsaker*, 74 Wn. App. 38, 873 P.2d 540 (1994).

Defense counsel then argued that a defense witness, Robert Estes, had been intimidated by the prosecutor in a jailhouse interview prior to trial. Mr. Estes was listed as both a defense and prosecution witness. A hearing occurred

outside the presence of the jury. At its conclusion, the court found no evidence of witness intimidation and required Mr. Estes to testify, but limited questioning to matters that would not elicit incriminating responses. The trial proceeded and the defense made a motion to dismiss the charges at the conclusion of the State's case in chief, which was denied.

Mr. Shaver testified on his own behalf. He admitted he was a methamphetamine user but denied manufacturing, conspiring to manufacture, or delivering the drug as charged in the information. On direct examination, defense counsel asked Mr. Shaver questions about some, but not all, of his prior criminal convictions. This opened the door for the State to impeach Mr. Shaver with a prior felony drug conviction that was similar to one of the counts charged in the current trial. Mr. Shaver candidly admitted the former drug conviction in response to the prosecutor's questions.

At the conclusion of the trial, a jury found Mr. Shaver guilty of four of the five charges. He requested a new trial but the motion was denied. Mr. Shaver was sentenced in the standard range.

ANALYSIS

1. CrR 3.6 Motion

Mr. Shaver contends the trial court erred when it denied his motion to suppress evidence seized as the result of an allegedly defective search warrant. He argues that neither the informant's basis for knowledge nor his credibility was sufficiently established to allow the magistrate to make an appropriate probable cause determination prior to issuing the search warrant.

■ An appellate court limits its review of findings of fact entered following a suppression motion solely to "those facts to which error has been assigned." *State v. Hill,* 123 Wn.2d 641, 647, 870 P.2d 313 (1994). Unchallenged findings are verities on appeal. *Id.* at 644.

Unfortunately, no findings or conclusions were submitted with the record on appeal, which is a procedural anomaly. "A separate assignment of error for each finding of fact a party contends was improperly made must be included with reference to the finding by number." RAP 10.3(g). When parties challenge findings of fact, they must include them verbatim in the brief or attach a copy of them in an appendix to the brief. RAP 10.4(c). Mr. Shaver complied with neither rule. Instead, he merely claims the trial court erred in denying his motion to suppress based on the State's inability to meet the *Aguilar-Spinelli*[1] test regarding confidential informants. Because the CrR 3.6 hearing and the court's oral decision were included in the record we hesitantly address the issue despite Mr. Shaver's inadequate briefing. However, the trial court's oral findings of fact are treated as unchallenged, and thus verities on appeal. *Hill*, 123 Wn.2d at 644.

Mr. Shaver's contention regarding the sufficiency of the affidavit of probable cause ultimately depends on whether the court's findings support its legal conclusion that the incriminating evidence was lawfully obtained as the result of a valid search warrant. The appellate court conducts a de novo review of conclusions of law in an order pertaining to a suppression motion. *State v. Mendez*, 137 Wn.2d 208, 214, 970 P.2d 722 (1999).

The trial court determined that the affidavit in support of the application for the search warrant written and submitted by the investigating officer included a handwritten statement signed by the confidential informant (CI), which relayed critical information to the officer investigating the drug crime that led to Mr. Shaver's arrest. This investigating officer's affidavit included his basis of knowledge surrounding the drug crime at issue and the reasons the CI's information was credible. These are the two prongs of the *Aguilar-Spinelli* test that must be satisfied prior to the search warrant issuing. The court made several find-

---

[1] *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969).

ings regarding the affidavit in support of the search warrant. They include: (1) the named CI initially contacted the investigating officer to report the alleged methamphetamine operation at the home of Robert Estes; (2) the officer was told the CI wanted to rid the community of drug dealers and also hoped for a favorable recommendation to the prosecutor regarding an outstanding criminal charge; (3) the investigating officer had been investigating the Estes household regarding illegal drug activity for many years prior to being contacted by the CI and had personal knowledge of high foot and automobile traffic in and out of the Estes residence and knew from license plate numbers that many visitors to the residence were known drug users; (4) in response to the investigating officer's directive, the CI went to the Estes home; (5) while at the Estes home the CI learned that Mr. Shaver was presently cooking meth and was teaching Mr. Estes to do so as well; (6) the comments Mr. Estes made to the CI were statements against penal interests, which made the statements more credible; (7) the investigating officer knew the CI for several years and knew the CI had been involved in the drug subculture in the past; and (8) the CI had previously provided reliable information to the investigating officer. The court then concluded that, taken as a whole, the information presented in the officer's affidavit and the CI's personal, signed statement provided sufficient compliance with the two-prong test of *Aguilar-Spinelli*. As a result, it determined there was sufficient probable cause for the search warrant to issue and denied Mr. Shaver's motion to suppress evidence. The findings support the court's conclusion. The trial court did not abuse its discretion when it denied Mr. Shaver's CrR 3.6 motion to suppress.

## 2. Ineffective Assistance of Defense Counsel

Next, Mr. Shaver claims the trial court erred when it refused to grant him a new trial on the basis of ineffective assistance of counsel. He lists five prejudicial errors committed by defense counsel: (1) failure to move in limine to

exclude portions of his prior criminal record, (2) introducing his entire criminal history even though some of the offenses could not have been used for impeachment purposes, (3) failing to object to the State's use of a previous drug conviction for impeachment purposes when the prejudice clearly outweighed the probative value, (4) deficient cross-examination of State witnesses, and (5) improperly arguing the motion to suppress.

■■■ We review an ineffective assistance of counsel claim de novo. *State v. S.M.*, 100 Wn. App. 401, 409, 996 P.2d 1111 (2000). We indulge in a strong presumption that defense counsel's performance is within the broad range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). The test for ineffective assistance of counsel is whether: (1) defense counsel's performance fell below the objective standard of reasonableness, and (2) this deficiency prejudiced the defendant. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). Prejudice results when it is reasonably probable that " 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *State v. Lord*, 117 Wn.2d 829, 883-84, 822 P.2d 177 (1991) (quoting *Strickland*, 466 U.S. at 694).

■■■ Mr. Shaver contends he did not receive effective assistance of defense counsel, especially as it relates to the issue of a prior drug conviction from the state of Oregon. When called to the stand to testify in his own behalf the following colloquy took place between Mr. Shaver and his attorney:

Q ... I meant to ask you earlier—you do have a criminal record; isn't that—

A Yes, sir.

Q —right, Mr. Shaver? Okay. In fact, what charges were you charged with, and I believe convicted of?

A Burglary two was two of the charges, and then a walk away from work release, which is an escape, they call it.

Q Okay.

A It was a walk away on a pass, and I just didn't return.

Q All right.

A That was back in 1985 and '86.

Q Okay. That's when you were charged with those?

A Yes.

Q And—

A I think I finally was convicted on everything in '90—in '87, I believe.

Q Okay. And that's included—that's the burglaries and the escape?

A Yes.

. . . .

Q . . . Have you had any criminal violations whatsoever since those in '85, '86, '87?

A No, sir.[2]

Later, during the State's cross-examination of Mr. Shaver, the following occurred:

BY MR. HAGERTY [deputy prosecutor]:

Q Mr. Shaver, you indicated that you have burglary, burglary, and escape; is that correct?

A Yes, sir.

Q Do you also have a drug case.

A No (inaudible) drug case?

Q Did you also enter a judgment and conviction and sentence on a drug case in the State of—

A Yes, it was—

Q —Oregon?

A —in the State of Oregon. Yes, it was. It wasn't shown on my—on my criminal history that you guys prepared.

. . . .

Q . . . When you sat here and just testified, you didn't mention anything about the possession conviction; did you?

---

[2] Report of Proceedings (RP) at 389-90.

A I didn't know if it was listed or not.

Q Did you know you had it?

A Yes.

Q When he [defense counsel] asked you what crimes you were convicted of, didn't you think it was important to admit that you had a felony—

A I was—

Q —drug conviction?[3]

Defense counsel did not object or even request a sidebar during this colloquy. This is the basis of Mr. Shaver's ineffective assistance of counsel claim. He argues an adequate defense attorney would have made a pretrial motion to suppress the prior escape and drug convictions because their probative value did not outweigh the substantial potential for prejudice pursuant to ER 403. Additionally, Mr. Shaver argues adequate defense counsel would have immediately objected to the line of questioning by the State regarding the drug crime that occurred in Oregon, or, at a minimum, requested a sidebar so the jury would not hear the conversation until the court had a chance to rule on the potential for prejudice. Mr. Shaver candidly admits the burglary convictions may have been allowed into evidence as crimes of dishonesty pursuant to ER 609(a)(2) but maintains the escape and drug convictions may well have been excluded if a hearing had taken place outside the presence of the jury. ER 403, 404, 609; *State v. Bankston*, 99 Wn. App. 266, 270-71, 992 P.2d 1041 (2000) (court must look at probative value and prejudice as well as consider and weigh *Alexis*[4] factors).

Mr. Shaver argues, and we agree, that he was denied effective representation and that he was prejudiced as a result pursuant to the well known *Strickland* test. It appears defense counsel was caught by surprise regarding Mr. Shaver's drug felony from the state of Oregon. Adequate representation should include accurate knowledge of prior

[3] RP at 395-96.

[4] *State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980).

criminal history, especially since the State had the information and used it to prepare a damaging cross-examination. We find it reasonably probable that defense counsel's lack of preparation adversely affected the outcome of this proceeding.

Mr. Shaver also argues that defense counsel did not adequately cross-examine the State's witnesses and did not sufficiently argue the CrR 3.6 motion to suppress. The record does not support these contentions. Because we determine Mr. Shaver was not adequately represented by defense counsel, his conviction must be reversed on this basis.

We do not address Mr. Shaver's remaining contentions as they are not dispositive.

Reversed.

KURTZ, J., concurs.

SWEENEY, J. (dissenting) — I respectfully dissent. This case was the subject of a motion on the merits by the respondent, State of Washington. RAP 18.14. I cannot do better than simply to adopt Commissioner Frank V. Slak's ruling, to-wit:

> James Edwin Shaver appeals from Klickitat County convictions of manufacturing and possessing methamphetamine and two counts of distribution of a controlled substance to a person younger than 18. He claims (1) he was denied the effective assistance of counsel; (2) the trial court improperly denied his motion to suppress; (3) the prosecutor engaged in reversible misconduct; and (4) the trial court erred in denying his motion for a new trial.

> Perceiving the issues as clearly controlled by settled law, evidentiary questions for which there is the necessary quantum of proof in the record or discretionary decisions involving a reasoned application of the law to the facts, the Respondent State of Washington has moved on the merits to affirm. RAP 18.14.

> Because (1) Mr. Shaver has failed to overcome the presumption of counsel's competence; (2) the record adequately discloses

and supports both the knowledge and credibility of the informants; (3) there was no State misconduct warranting a new trial; and (4) there were no grounds for granting a new trial, the State's motion is granted, and the judgment and sentence are affirmed.

To prevail upon a claim of ineffective assistance of counsel, a defendant must show (1) his counsel's actions fell below an objective standard of competence and (2) but for counsel's unprofessional errors, the results of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). But counsel is strongly presumed competent, and an appellant "must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *Id*. at 336.

Mr. Shaver contends his trial lawyer was ineffective in (1) failing to move in limine to exclude his prior criminal record; (2) introducing his criminal history even though some of the offenses could not have been used for impeachment purposes; (3) failing to object to the State's use of a previous drug conviction for impeachment purposes; (4) placing himself in a position in which his testimony was necessary to impeach a witness; and (5) incorrectly arguing a motion to suppress.

The first three grounds relate to trial counsel's direct examination of Mr. Shaver so he could explain why he was hiding from police when they executed a search warrant. Mr. Shaver had been previously convicted and was on probation. Although he denied any probation violations, he said he had received notice of one for failure to report, and he believed the officers who were executing the search warrant were actually there to arrest him on the probation-violation allegation. That theory, of course, would negate any inference that he was hiding in the closet to avoid connection with the methamphetamine manufacturing operation. Without his explanation the jury could easily have drawn the inference that he had guilty knowledge of what was transpiring at the residence and was hiding to avoid an arrest for it. Thus, counsel's inquiry was a legitimate trial tactic.

Although counsel might have avoided asking about the specific crimes for which Mr. Shaver was on probation, once he mentioned the probation, it was probably fair game on cross-examination, and it would have lessened the impact of the

offenses if they were first revealed by Mr. Shaver on direct examination. Again, that could well have been a legitimate trial tactic.

The fact that Mr. Shaver did not fully answer the question about his criminal history—and thus allowed the State to impeach him by pointing out that he also had a drug conviction involving methamphetamine—was not counsel's fault. The mistake, if any were made, was Mr. Shaver's for failing to fully answer the question propounded by his own lawyer. And, because he had "opened the door" by discussing his record, the State was free to further inquire. There was no error by trial counsel in failing to object and no error by the trial court in permitting the inquiry. Therefore, Mr. Shaver was not denied the effective assistance of counsel as alleged in his first three arguments.

Mr. Shaver next contends trial counsel ineffectively argued the motion to suppress and that the trial court erred in denying the motion. Mr. Shaver argues that neither the informant's basis for knowledge nor his credibility was sufficiently established to allow the trial court to make an appropriate probable cause determination for issuing the search warrant. Mr. Shaver is incorrect.

The affidavit in support of the application for the search warrant disclosed the name of the informant and indicated both his basis for his knowledge and the reasons for believing him. Those are necessary elements under the two-part test of *Aguilar-Spinelli. See State v. Cole*, 128 Wn.2d 262, 287, 906 P.2d 925 (1995). The affidavit indicated the informant had initially contacted an officer to report the methamphetamine operation by noting that one of the other residents, Robert Estes, had told the informant that. The officer directed the informant to verify the information, and the informant then went to the residence. He there contacted Mr. Estes, who denied him entry, saying that Mr. Shaver was teaching him how to cook meth and did not want anyone in the apartment when he was doing so. The informant noticed Mr. Estes' disheveled state and "spun" out conduct. The officer said in the affidavit that he had known the informant for several years and reported that the informant had been associated with the drug sub-culture for several years. The officer said the informant wanted to rid the community of drug dealers and wanted a

favorable recommendation from the officer to the prosecutor on some apparently outstanding allegations. The officer said the informant had previously provided reliable information.

Finding Mr. Estes' comments were statements against his penal interest, and thus clothed with more credibility, and that when coupled with the officer's direct observation of high foot and automobile traffic in and out of the residence, along with the informant's established "track record" for reliability, the court determined there was sufficient compliance with *Aguilar-Spinelli* to establish probable cause for issuance of the search warrant.

Great deference is given to the issuing magistrate's probable cause determination, *State v. Young*, 123 Wn.2d 173, 195, 867 P.2d 593 (1994), and supporting affidavits are to be read as a whole, in a common sense, non-technical manner, with doubts resolved in favor of the warrant. *State v. Casto*, 39 Wn. App. 229, 232, 692 P.2d 890 (1984), *review denied*, 103 Wn.2d 1020 (1985). The trial court's oral findings and conclusions are supported by the affidavit in support of the request for the warrant, and they are reasonable inferences and conclusions to be drawn from it. They are legally sound, too, because statements against penal interest help establish reliability, *State v. Lair*, 95 Wn.2d 706, 630 P.2d 427 (1981), and a general statement that an informant has given an affiant "information proven to be true and correct in the past" is sufficient to establish the informant's credibility. *State v. Fisher*, 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied*, 457 U.S. 1137 (1982). There was no error in denying the motion to suppress.

Finally, Mr. Shaver claims prosecutorial misconduct deprived him of a fair trial. He claims the State (1) violated the Rules of Professional Conduct by calling a witness represented by defense counsel without obtaining a waiver from him; (2) intimidated a witness by threatening to bring perjury charges against him; (3) used improper felonies for the purposes of impeachment; and (4) argued that he had a duty to produce certain proof at trial.

A defendant alleging prosecutorial misconduct bears the burden of showing both the improper conduct and its prejudicial effect. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998). To establish preju-

dice, the defendant must show a substantial likelihood that the misconduct affected the jury's verdict. *Id.*

Mr. Shaver's first complaint is that the State violated the RPC's by calling a witness represented by his lawyer without obtaining a waiver from him. This does not appear to be an instance of misconduct by the State. Rather, it appears to be an assignment of error directed to the trial court's ruling that there was not such a conflict between the interests of Mr. Shaver and the witness (and not such an indication that the witness was represented by Mr. Shaver's counsel) to warrant counsel's withdrawal or preventing the witness from testifying. In any event, there was no error. First, there was truly no indication of a continuing representation of the witness by Mr. Shaver's trial lawyer. Although the lawyer had represented the witness in a previous criminal matter, that matter had been concluded, and there was no other ongoing representation. Secondly, that witness consented to a waiver of the lawyer-client privilege, and trial counsel vigorously cross-examined him. Nothing in the record suggests that Mr. Shaver's trial lawyer was caught in a "struggle to serve two masters." *State v. Robinson*, 79 Wn. App. 386, 395, 902 P.2d 652 (1995) (citations omitted). Absent such a showing, prejudice cannot be presumed. *In re Richardson*, 100 Wn.2d 669, 677, 675 P.2d 209 (1983). Since there is neither actual prejudice shown nor prejudice that may be presumed, Mr. Shaver has not demonstrated any error respecting the calling of the witness.

Next, Mr. Shaver contends the State engaged in prosecutorial misconduct by threatening perjury charges against a defense witness if he failed to tell the truth. While the State deprives a defendant of due process when it effectively keeps a defense witness off the stand by threatening the witness, *State v. Carlisle*, 73 Wn. App. 678, 679, 871 P.2d 174 (1994), "[i]t is hardly a threat for a prosecutor to advise a potential witness, who is telling two stories with respect to a defendant's criminal involvement, that he might be prosecuted for perjury if he testifies falsely." *United States v. Simmons*, 670 F.2d 365, 371 (D.C. Cir. 1982).

The alleged threats here were directed to witness Estes, who testified out of the jury's presence that the prosecutor threatened him with perjury if he testified inconsistently with the physical evidence. Called as a defense witness, Mr. Estes

testified that he was the person cooking the meth and that Mr. Shaver was not really involved. He said that Mr. Shaver may have handed him a few things, but that he was not involved with the actual cooking. This testimony tended to exonerate Mr. Shaver and also explained how Mr. Shaver's fingerprints were found on an item used in the making of the meth. Mr. Estes further denied that Mr. Shaver gave any meth to a young female at the residence. Since *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980), which requires that the evidence and all reasonable inference to be drawn from it be viewed in a light most favorable to the State's conduct did not appear in any way to have prevented Mr. Estes from testifying favorably for Mr. Shaver, he cannot establish the necessary prejudice. There was no prosecutorial misconduct.

As for the third alleged instance of prosecutorial misconduct, the use of the felony for impeachment purposes has already been resolved adversely to Mr. Shaver.

Finally, Mr. Shaver argues that the State engaged in prosecutorial misconduct during its closing argument when the prosecutor said he had a duty to produce evidence of his innocence. Specifically, the contention is directed to the prosecutor's argument about Mr. Shaver's testimony that witness Gregory was aware of events at the residence because he had read Mr. Shaver's copy of police reports while they were in the jail. Mr. Gregory denied having seen the statements, but Mr. Shaver insisted he had read them in the jail. Moreover, Mr. Shaver testified he still had the copies of the reports—not in his cell, though. He did not produce those copies, however, and that is the evidence about which the prosecutor was arguing. He said:

> The State has the burden to prove beyond a reasonable doubt, but if the defendant raises a piece of evidence, and an issue to you, he can't just say it and move on, because he has it. He uniquely has the position. If there was a statement, why wasn't it produced? Why aren't you able to see it?
>
> The State didn't have it. We couldn't do anything about it. We didn't even know it existed until he got on the stand. He says he has it now. Do you have it as a piece of evidence? No. Why? Question why we don't have it.
>
> If he has it, fine, let's see it. But if we don't have it, then there's no way for you to really grasp Mr. Gregory's denial of

ever seeing anything, and his allegation that Mr. Gregory knew all these unique facts in this case, particularly distribution to an under age female, because of this statement, this elusive statement we don't have.

The prosecutor's remarks had nothing to do with placing a burden upon Mr. Shaver to prove anything. It was directed to his burden of production; he mentioned a document that he said was in his control, but he did not produce it. The prosecutor's remarks did not require Mr. Shaver to prove his innocence or to disprove any of the elements of the offense. Rather, they were directed at a piece of evidence exclusively in his possession and not introduced as an exhibit. Since Mr. Shaver raised the point, the State was entitled to address it. Moreover, trial counsel correctly did not object to the statements.

When viewed, as required, "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury," *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998), the comments simply did not have a substantial likelihood of affecting the verdict. They did not constitute improper closing argument.

The State's motion on the merits is granted. The judgment of the Superior Court is affirmed.

Commissioner's Ruling filed June 4, 2002 (footnote omitted).

I would only add to this well-reasoned ruling that there are many ways to try the same jury case. The way Mr. Shaver's attorney elected to defend this criminal prosecution is a legitimate one. Appellate courts should avoid substituting their judgment, which is necessarily based upon a cold record, for that of the lawyers and a judge who were there and tried the case.

I would affirm this conviction.

Reconsideration denied June 19, 2003.