¶51 The Sentencing Reform Act of 1981, chapter 9.94A RCW, requires the sentencing court to calculate a defendant's offender score by the sum of points accrued under RCW 9.94A.525. State v. Ross, 152 Wn.2d 220, 229,95 P.3d 1225 (2004). The State must prove the defendant's criminal history to the sentencing judge by a preponderance of the evidence, or the court may rely on the defendant's stipulation or acknowledgement of prior *Page 563 
convictions to calculate the offender score. RCW 9.94A.441, .530(2); In re Pers. Restraint of Cadwallader,155 Wn.2d 867, 873-74, 123 P.3d 456 (2005).
 ¶52 But "a defendant cannot, by way of a negotiated plea agreement, agree to a sentence in excess of that authorized by statute." In re Pers. Restraint of Goodwin,146 Wn.2d 861, 872, 50 P.3d 618 (2002). That includes a sentence based on an incorrect offender score calculation. Id. Because I believe the trial court discounted its role in calculating the offender score, which resulted in an abuse of its discretion by vacating the binding pleas, and because the pleas were vacated when Michael Malone was not represented by counsel, I must dissent.
 ¶53 The majority perceives no error because Mr. Malone agreed to withdraw his pleas, he misunderstood the plea terms, and he rejected the same plea agreement when it was re-offered. Majority at 554-55. Additional information must be considered to clarify the facts and to fully appreciate these issues. It is also important to consider the facts involving the court's decision to vacate the pleas when Mr. Malone was not represented by counsel. See State v. Robinson, 153 Wn.2d 689, 694,107 P.3d 90 (2005) ("the right to counsel is constitutionally guaranteed at all critical stages of a criminal prosecution").
 ¶54 Mr. Malone never set out to withdraw his guilty pleas. When Mr. Malone appeared for sentencing with counsel at the first hearing on his guilty pleas, he argued that he was entitled to have the trial court calculate the offender score. The State claimed that his argument constituted a breach of their plea agreement. The State then asked that the guilty pleas be vacated.
 ¶55 At the second hearing, the court asked Mr. Malone if he wanted to discharge his appointed counsel. He said he did, but he stated that he was not going to be acting pro se. He stated that he contacted private counsel who he expected to appear in court that day but did not.
 ¶56 The trial court asked the public defender and the prosecutor whether appointed counsel should be discharged *Page 564 
and the motion on the plea agreement continued to another time when Mr. Malone secured new counsel. The prosecutor indicated that the pleas could be vacated without harm because she would reoffer the same deal if Mr. Malone would agree to the offender score and sentencing range.
 ¶57 The public defender indicated that he did not think Mr. Malone wanted counsel to speak for him. The court then asked Mr. Malone if he wanted to proceed to discharge counsel or vacate the plea agreement. Mr. Malone twice began to speak, but the court interrupted him. On the second occasion the court stated, "Do you want me to go ahead and decide whether or not you can fire your attorney or not right now?" Report of Proceedings (May 6, 2004) (RP) at 13-14. Mr. Malone stated that he did. The court granted the motion. He told Mr. Malone: "I expect however that you immediately make every effort to get on board an attorney to make an appearance and to get involved." RP at 14.
 ¶58 On the vacation of the pleas, the State suggested "some colloquy would be helpful obviously" since Mr. Malone was unrepresented. RP at 14. The court responded, "But the colloquy is rather silly. He's going to get a lawyer. He's not telling me he wants to be pro se." RP at 14-15. The following exchange was held.
 THE DEFENDANT: My question to this is that agreement to the plea that was supposedly there, before Judge Price or the honor came out, these two, I say with respect, were I guess discussing my case, and the agreement that I understood was as in the months, of course, which is already done, but the essential points behind that, sir, and —
 THE COURT: Just tell me this. Do you want to adopt and unequivocally at this time tell the Court that you want to adopt the plea agreement as it was entered into before Judge Price, or do you want it vacated?
 THE DEFENDANT: I'm trying to understand when you say vacate. I understand the vacate was to —
 THE COURT: Erase it.
 THE DEFENDANT: Erase it out. *Page 565 
 THE COURT: Erase it out. It didn't happen. Do you want to go to where you were before you agreed on the plea?
 THE DEFENDANT: I think it would be necessary so I would have a chance to prove myself on these cases.
 THE COURT: I'm just going to do this. We're going to vacate the plea in both cases, and it's with the understanding that the State has made a comment that they will re-initiate the negotiation and re-offer the plea as soon as they're advised of who they're dealing with as counsel for the defendant, Mr. Malone.
RP at 15-16.
 ¶59 The choice the trial court presented to Mr. Malone was untenable. In order to maintain the pleas that the court had accepted, the trial court required Mr. Malone to "unequivocally" reaffirm it. But to do that, the trial court required him to stipulate to an offender score — which turned out to be incorrect. Mr. Malone was required to forego his legal argument on the offender score, the State did not have to prove it, and the trial court did not have to decide it. See
RCW 9.94A.441, .525. If Mr. Malone did not accept the reaffirmation of his guilty plea, the trial court would vacate it. To make matters worse, this proposal was made to and accepted by Mr. Malone when he was without counsel.
 ¶60 "A plea agreement is a contract between the defendant and the prosecutor." In re Pers. Restraint of Lord,152 Wn.2d 182, 188, 94 P.3d 952 (2004) (citing State v.Turley, 149 Wn.2d 395, 400, 69 P.3d 338 (2003)). Once validly accepted by the court, a plea agreement is binding on the prosecutor and the court. State v. Schaupp,111 Wn.2d 34, 38, 757 P.2d 970 (1988).
 ¶61 The trial court's misunderstanding of the law is reflected in the court's reason for its order vacating the pleas: "[T]he court finds that: good cause exists, defendant is not in agreement w[ith] plea agreement at this time has affirmatively indicated so." Clerk's Papers (No. 23696-0-III) at 124. Mr. Malone did not disagree with the plea agreement. He wished to make a legal argument concerning *Page 566 
the calculation of his offender score. Goodwin,146 Wn.2d at 875-76. The trial court must decide the offender score. The trial court should have heard Mr. Malone's argument.
 ¶62 The majority found nothing in the record to indicate that the offender score of 4 advocated by the State was incorrect. Majority at 554-55.1 disagree. The "Understanding of Defendant's Criminal History" signed on the date of the guilty pleas, February 26, 2004, sets forth two prior convictions — a 1980 Texas conviction for bail jumping and a 1980 Texas conviction for unauthorized use of a motor vehicle. A third conviction for grand theft, in 1991, accounted for a third point toward Mr. Malone's offender score. He pleaded guilty to one felony in each case, for a total offender score of 4 in each case.
 ¶63 The two Texas convictions were not applied toward Mr. Malone's offender score when he was finally sentenced on November 30, after the trial, because those convictions washed out. The prosecutor ultimately agreed that the Texas convictions washed out, and that is what the judge found when Mr. Malone was sentenced after trial. Those two convictions were the basis of Mr. Malone's offender score argument.[3]
 ¶64 The majority discerned no argument by Mr. Malone to the trial court that the offender score was wrong. Majority at 554.1 think Mr. Malone did make an argument, although, made pro se, it is difficult to parse. Indeed, his argument was countered by the prosecutor. And the State made it quite clear that it wished to vacate the pleas as a direct consequence of Mr. Malone's desire to dispute the calculation of his offender score. That was the purpose of the hearing set by the State. Nonetheless, whether the offender score was incorrect or not, he still had the right to *Page 567 
make the legal argument that certain convictions washed out.
 ¶65 The majority also thought that Mr. Malone agreed to the offender score and criminal history. Majority at 555. Yet the majority believes, and I agree, that Mr. Malone had a right to be sentenced based on an accurate criminal history, regardless of what he or his counsel agreed to in making his guilty pleas. Majority at 554; see Goodwin, 146 Wn.2d at 875-76
(holding parties do not waive legal issues of "wash out" convictions by failing to raise them at the trial level). Even though Mr. Malone agreed to the fact of the existence of his criminal history, he was entitled to argue the legal effect of the criminal history as it applied to his offender score.
 ¶66 The trial court ordered Mr. Malone's appointed counsel's withdrawal, knowing that Mr. Malone did not wish to waive his right to counsel, yet it conducted a hearing to vacate his pleas in the absence of counsel. Even if Mr. Malone instigated a motion to withdraw his pleas — which he did not — he would be entitled to counsel. State v.Harell, 80 Wn.App. 802, 804-05, 911 P.2d 1034 (1996).
 ¶67 Denial of the right to counsel at a hearing to withdraw a plea, a critical stage of the proceedings, is presumed prejudicial and warrants reversal without a harmless error analysis. Id. at 805 (citing City of Seattle v.Ratliff, 100 Wn.2d 212, 219, 667 P.2d 630 (1983); Statev. Robinson, 79 Wn.App. 386, 393, 902 P.2d 652 (1995)). And Mr. Malone did not make an unequivocal demand to proceed pro se or a knowing, voluntary, or intelligent waiver of his right to counsel. Id. (quoting State v. Sinclair,46 Wn.App. 433, 437, 730 P.2d 742 (1986)).
 ¶68 I agree with the majority that Mr. Malone does not have a constitutional right to a plea bargain. See Majority at 553 (citing State v. Wheeler, 95 Wn.2d 799, 804,631 P.2d 376 (1981)). But he does have a constitutional right to *Page 568 
counsel[4] E.g., State v. Silva,108 Wn.App. 536, 542, 31 P.3d 729 (2001) (quoting Frazer v. UnitedStates, 18 F.3d 778, 782 (9th Cir. 1994));Robinson, 79 Wn.App. at 393-94 (citing Chapman v.California, 386 U.S. 18, 23 n. 8, 87 S.Ct. 824,17 L. Ed. 2d 705 (citing Gideon v. Wainwright, 372 U.S. 335,83 S.Ct. 792, 9 L.Ed. 2d 799 (1963))).
 ¶69 The majority also notes that the plea bargain was reoffered. Majority at 552. But it was only extended for 11 days, until May 21, 2004. Mr. Malone had no counsel appear on his behalf until that date. Also, within a week of the plea revocation hearing, Mr. Malone had been sentenced on the two other felonies. The damage was done before he got counsel.
 ¶70 I believe Mr. Malone is entitled to specific performance of the plea agreement. See State v.Tourtellotte, 88 Wn.2d 579, 585, 564 P.2d 799 (1977);State v. Harrison, 148 Wn.2d 550, 557, 61 P.3d 1104
(2003).
 ¶71 In summary, I would conclude that the trial court abused its discretion when it ordered that the guilty pleas be vacated. Further, I would hold that Mr. Malone was denied the right to counsel at a critical stage of the proceedings. Therefore, I would reverse the convictions and conclude that Mr. Malone is entitled to enforce the plea agreement.
[3] Mr. Malone was still sentenced with 3 points on his offender score for prior convictions. Between the time Mr. Malone entered his guilty pleas and the time he was finally sentenced after the trial, there had been a disposition in two domestic violence cases on May 11, 2004. Thus, even with the Texas convictions washing out, his offender score again rose to include a total of three prior felonies.
[4] Mr. Malone did not develop a right to counsel argument on appeal. This court will generally decide only those issues raised by the parties. State v. Aho, 137 Wn.2d 736,740, 975 P.2d 512 (1999). But when the issue is purely a legal one and the record is sufficient and clear, this court will sua sponte raise an issue and even rest the decision on that issue without further briefing. Id. at 740-41. This is a clear legal issue that dovetails and supports the plea issue raised by Mr. Malone. *Page 569