IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33095-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATHANIEL LEWIS VICKERS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — A jury found Nathaniel Vickers guilty of delivery of dihydrocodeinone. For the first time on appeal, he challenges (1) the trial court's failure to engage in an individualized inquiry into his ability to pay legal financial obligations imposed and (2) a mandatory $100 DNA[1] collection fee that he contends violates substantive due process. In a pro se statement of additional grounds (SAG) he raises several other arguments. We find no merit to any of his contentions other than his challenge to the trial court's failure to engage in an individualized inquiry as to his ability

---

[1] Deoxyribonucleic acid.

No. 33095-8-III
*State v. Vickers*

to pay discretionary legal financial obligations.  We reverse and remand for a new sentencing hearing.  We grant late-filed motions to not award appeal costs and to enlarge the time to file that motion and its supporting report on continued indigency.

FACTS AND PROCEDURAL BACKGROUND

A jury found Nathaniel Vickers guilty of delivery of dihydrocodeinone in a public park.  At sentencing, the State requested $3,256.70 in legal financial obligations (LFOs).  A total of $1,556.70 were discretionary ($200.00 in court costs; $81.70 in sheriff fees; $775.00 for a court appointed attorney; and $500.00 for a drug enforcement fund), and the other $1,700.00 were mandatory ($1,000.00 fine for violation of the Uniform Controlled Substances Act, chapter 69.50 RCW; $500.00 victim assessment; $100.00 crime laboratory fee; $100.00 DNA biological sample fee).

Having determined the total costs requested by the State, the court engaged in the following inquiry of Mr. Vickers:

> THE COURT:  Your financial obligations between court costs, fees and fines, totals $3,256.70.  And that will be made payable at not less than $50 per month.
> When you are employed, what do you do?
> THE DEFENDANT:  Disability.
> THE COURT:  Okay.  Those payments will begin 90 days after release.

Report of Proceedings (RP) at 308.  Mr. Vickers did not object.

The judgment and sentence that the court then signed contains the following language:

2

No. 33095-8-III
*State v. Vickers*

> 2.5    ABILITY TO PAY LEGAL FINANCIAL OBLIGATIONS. (RCW 9.94A.760)  The court has considered the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change.  The court specifically finds that the defendant has the ability or likely future ability to pay the legal financial obligations ordered herein.

Clerk's Papers (CP) at 72.  Again, Mr. Vickers did not object.

He appeals.

## ANALYSIS

*LFOs*

Mr. Vickers argues the trial court erred when it imposed discretionary LFOs without conducting an individualized inquiry into his ability to pay.

As a preliminary matter, we must consider whether to accept review of the issue since Mr. Vickers did not object to the finding of ability to pay in the trial court, thereby failing to preserve the issue.  RAP 2.5(a); *State v. Blazina*, 182 Wn.2d 827, 833, 344 P.3d 680 (2015) ("[u]npreserved LFO errors do not command review as a matter of right").  A majority of the panel favors exercising our discretion under RAP 2.5(a) to review the issue.

Under RCW 10.01.160(3), courts may not order a defendant to pay discretionary "costs unless the defendant is or will be able to pay them," taking into account "the financial resources of the defendant and the nature of the burden that payment of costs will impose."

3

No. 33095-8-III
*State v. Vickers*

> Practically speaking, this imperative under RCW 10.01.160(3) means that the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry. The record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay. Within this inquiry, the court must also consider important factors . . . such as incarceration and a defendant's other debts, including restitution, when determining a defendant's ability to pay.

*Blazina*, 182 Wn.2d at 838.

Beyond the brief inquiry reproduced above, the court was aware Mr. Vickers was 52 years old, had at some point worked in a mail room, and had no prior felony convictions. The court also knew Mr. Vickers had requested a drug offender sentencing alternative, under which offenders may be required to pay $30 per month to offset the cost of monitoring for controlled substances. RCW 9.94A.660(6)(a). The record does not show that the trial judge considered these factors or inquired about others before imposing the discretionary LFOs. Because the trial court failed to make the required individualized inquiry into Mr. Vickers's ability to pay, remand is required.

*DNA collection fee*

Mr. Vickers next argues that imposing the DNA collection fee on an indigent defendant violates substantive due process. But he can point to no facts in the record suggesting that he cannot pay a $100 fee. He directs us to his statutory indigence for purposes of court appointment of appellate counsel, but evidence of his statutory indigence is unhelpful because the cost of appellate representation in a criminal matter

4

"exponentially exceeds $100." *State v. Stoddard*, 192 Wn. App. 222, 228, 366 P.3d 474 (2016). The alleged error therefore is not manifest and we decline to review it. RAP 2.5(a); *Stoddard*, 192 Wn. App. at 228-29.

STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds for review (SAG), Mr. Vickers raises four.

*Right to testify.* Mr. Vickers asserts he was not given the right to testify on his own behalf, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. But the record reveals he was questioned by the trial court and explicitly acknowledged that the choice not to testify was his:

THE COURT: Mr. Vickers, you are choosing not to testify, correct?
THE DEFENDANT: Yes.

RP at 234.

*Ineffective assistance of counsel.* Mr. Vickers contends his attorney provided ineffective assistance of counsel in the following respects: (a) he failed to call witnesses in Mr. Vickers's defense; (b) he did not sufficiently question the all-white jury for bias and prejudice; and (c) knowing that Mr. Vickers suffered from a mental health condition, he did not ensure that Mr. Vickers understood a plea bargain.

> To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation

5

> prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). The claim fails if the defendant fails to satisfy either prong. *Thomas*, 109 Wn.2d at 226. There is a strong presumption that counsel performed effectively. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Some of Mr. Vickers's complaints depend on facts outside the record (*e.g.*, an asserted offer of a plea bargain) and are not reviewable in a direct appeal. *McFarland*, 127 Wn.2d at 335. Others are insufficiently explained to inform us of the nature of the alleged error. RAP 10.10(c). We address this ground for review to the extent we are able.

After the State rested and Mr. Vickers's lawyer informed the court that the defense would not be presenting a case, the prosecutor asked the trial court to confirm that it was Mr. Vickers's decision not to testify, which the court did, as previously discussed. In addition, the prosecutor began to ask the court to confirm Mr. Vickers's agreement with the decision not to call another person who had been identified as a possible defense witness, but then corrected himself, recognizing that it was not a client prerogative:

> [PROSECUTOR]: . . . we would ask the Court to make the same inquiry of the Defendant of himself that he chose not to put on this witness—Or, well,

6

I could be wrong because now that I'm thinking about it, that also would be considered a defense attorney's decision too, so—

THE COURT: Correct.

[PROSECUTOR]: So I will defer that to counsel and the Court. I just—

[DEFENSE COUNSEL]: Right, your Honor. I had made that decision on my own not to present Ms. Clouse or any other witness, regardless of what Mr. Vickers may or may not have said to me or agreed to. I would—I would object to an inquiry in that regard because it's my decision and the conversations I had with Mr. Vickers in that regard are confidential. My sense is that is not a proper inquiry by the Court.

THE COURT: I am not going to inquire.

RP at 234-35. Because it appears from counsel's statement that he made an informed, tactical decision not to call the witnesses, Mr. Vickers's claim of ineffective assistance fails. *State v. Robinson*, 79 Wn. App. 386, 396, 902 P.2d 652 (1995) ("[A] complaint that an attorney erred in failing to call a certain witness is ordinarily rejected as tactical.").

Mr. Vickers next argues that he "was given an all-white jury with no screening for bias and prejudice." SAG at 2. "To establish ineffective assistance of counsel based on trial counsel's performance during voir dire, a defendant generally must demonstrate the absence of a legitimate strategic or tactical reason for counsel's performance." *State v. Johnston*, 143 Wn. App. 1, 17, 177 P.3d 1127 (2007) (citing *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 709, 101 P.3d 1 (2004)).

After the trial court introduced the parties to the venire and briefly explained the case, and before turning voir dire over to the lawyers, the trial court asked the members of the venire whether there was anything about the case "that might cause you to begin this trial with any feelings or concerns regarding your participation" or whether anyone

7

knew of "any reason why you might not be able to try this case impartially and be fair to both the State and the Defendant." RP at 22-23. The three members of the venire who responded "yes" were questioned by the prosecutor and two who expressed bias toward the defendant personally (not mentioning his race) were excused. RP at 24-30. Mr. Vickers fails to demonstrate that his lawyer did not make a tactical decision not to offend prospective jurors who might view additional, more pointed questioning as implicitly accusing them of racism. He also fails to demonstrate any probability that the jurors seated (who acquitted him on one count) were biased against him.

*Examination of confidential informant.* Mr. Vickers suggests he was prevented from challenging the credibility of the confidential informant. The confidential informant's identity was revealed, she testified, and the jury heard that she was working for the police to resolve theft charges, had been addicted to prescription pain medication, and the money she received as a confidential informant was her only source of income. Mr. Vickers does not demonstrate any error or ineffectiveness of his lawyer in this connection.

*Right to medical care.* Finally, Mr. Vickers claims he did not receive needed treatment and medication for his bipolar disorder "[b]efore arrest," and was also denied a right to treatment under the Eighth Amendment to the United States Constitution. SAG at 3. Such a claim must be addressed by a personal restraint petition, not in the direct appeal of a criminal conviction.

8

No. 33095-8-III
*State v. Vickers*

We reverse and remand for a new sentencing hearing. We exercise our discretion under RAP 14.1 to deny the State costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

9